IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| INTEGON NATIONAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| ALICIA MEJIA GOMEZ, BRIAN MONROY MEJIA, and MARGARET MITCHELL PRICE, as personal representative of the Estate of Alicia Maria Mitchell, | ) ) ) ) ) |
| Defendants. | ) ) ) |

No. 2:19-cv-02958-DCN

**ORDER**

The following matter is before the court on defendant Margaret Mitchell Price's ("Price") motion to compel, ECF No. 35. For the reasons set forth below, the court grants in part and denies in part the motion.

## I. BACKGROUND

This insurance coverage case arises out of a fatal automobile accident. On January 5, 2018, defendant Brian Monroy Mejia ("Mejia") was driving a 2003 Ford Expedition in Charleston County, South Carolina when he was involved in an accident that resulted in the death of pedestrian Alicia Maria Mitchell ("Mitchell"). Price is the personal representative of the estate of Mitchell. The Ford Expedition was owned by Mejia's mother, defendant Alicia Mejia Gomez ("Gomez"), and covered by an automobile insurance policy ("the Policy") issued by plaintiff Integon National Insurance Company ("Integon").

About a year prior to the accident, Gomez completed an Alabama Personal Auto Insurance Application ("the Application") to obtain the Policy. The Application required

1

Gomez to list all persons "living in your household who are at least 14 years of age" and additionally "list all persons who are 'regular operators' of your vehicle, whether living in your household or not." ECF No. 1-1 at 16. "Regular operator" is defined as "anyone who has used the vehicle to be insured under this policy at least once a week or at least 30 times over the last 12 months." Id. The Application further stated that Gomez had a "continuing duty during the life of this policy to notify [Integon] any time a person at least 14 years of age becomes a household member or regular operator." Id.

The following page of the Application, titled "UNDISCLOSED DRIVER", stated that:

> By your signature below, you acknowledge and agree that ALL persons of driver permit age or older who live with you are listed in this Application. In addition, you agree that ALL persons who do not live with you but regularly operate or have access to your vehicle(s) are listed on this Application.
>
> I understand that I have a continuing duty to notify [Integon] within 30 days of any changes of members of my household of eligible driving age or permit age and as further defined in the Applicant's Statement below. In addition, I have a continuing duty to notify [Integon] within 30 days of any Regular Operator of any vehicle listed on the Policy.
>
> I understand [Integon] may rescind this Policy, if the answers on this Application are false or misleading and materially affect the risk [Integon] assumes by issuing the Policy.

Id. at 17. The Application listed two drivers, Gomez and Misdrain Hernandez, and three vehicles, and Gomez stated that there were no regular operators or household members who were not listed on the Application. The Application required Gomez to again "agree that ALL persons 14 years of age or older who live with me, as well as ALL operators who regularly operate my vehicles and do not reside in my household, are shown above." Id. at 18. Finally, the Application provided that "I understand that I have a continuing

2

duty to notify [Integon] within 30 days of any changes of . . . residents of my household of eligible driving age or permit age . . . ." Id. at 18. Gomez signed the Application.

In reliance on the information listed in the Application, Integon issued the Policy. The Policy incorporates the Application into the Policy. Id. at 26. The Policy defines "Family Member" as "[a] person related to you by blood, marriage or adoption who resides in your household . . . at the time of the accident or loss" and "includes your unmarried, dependent children living temporarily away from home who intend to reside in your household." Id. at 27. The Policy's definition of "Regular Operator" mirrors the definition of "Regular Operator" in the Application, defining the term as "someone who uses a covered auto at least once a week or at least thirty (30) times over the last twelve (12) months prior to an accident or loss." Id. at 28. The Policy defines "reside", "resides", and "residing" as "to dwell within the household as the person's primary and legal domicile. Minor dependent children whose parents are separated or divorced shall be deemed to reside in both parents' households." Id.

The Policy requires prompt notification of any accident or loss and lays out various requirements mandating the insured's cooperation with Integon's investigation in the event of a loss. Id. at 29. The Policy also requires the insured to advise Integon of any material changes, such as "[p]eople residing in your household." Id. at 52. Finally, the Policy reserves the rights to rescind the Policy if the insured or the insured's family member makes any false statements or representation to Integon with respect to a material fact or circumstance or conceals, omits, or misrepresents any material fact or circumstance. Id. at 57. A material fact or circumstance is defined by the Policy as

failing to disclose on the Application all persons residing in the insured's household or regular operators of the covered auto.  Id.

The Policy had effective dates of January 11, 2017 to July 11, 2017.  During this period, the Policy was changed via an endorsement to remove one of the vehicles originally listed in the Application and to add the 2003 Ford Expedition that was involved in the car accident.  The Policy was renewed and extended coverage until January 11, 2018.  Mejia was born on May 2, 2000 and was 16 years old when Gomez completed the Application, 16 years old when the Policy was issued, and 17 years old when the Policy was renewed.  Integon alleges that Mejia was a resident of Gomez's house throughout this entire time, which Price disputes, but it is undisputed that Gomez never listed Mejia as a household member, regular operator, or driver on the Application nor was he added to the Policy as such.

Integon claims that neither Gomez nor Mejia notified Integon of the accident, and that Integon did not receive notice of the accident under August 2018, seven months after the accident, by way of a letter from Price's counsel.  In the letter, Price's counsel demanded that Integon tender the full limits of its policy within 72 hours of receiving the demand in exchange for a covenant not to execute and advising that Price would withdraw her offer to settle if Integon failed to meet the demand within 72 hours.  Price alleges that Integon did not comply with this demand, and at the hearing, the parties explained that Integon did tender the full limits of the policy but that the check was not delivered within the 72-hour time frame.  Integon further alleges that Mejia was generally difficult to locate during its investigation and that Gomez failed to cooperate during Integon's investigation, which prejudiced Integon's ability to investigate the loss.

Price filed a wrongful death suit in this court against Mejia and Gomez, Price v. Mejia, 18-cv-02673-DCN ("the Underlying Action"). Integon issued a reservation of rights letter and is currently providing a defense in the Underlying Action. Integon filed the instant action in the Court of Common Pleas in Dorchester County, South Carolina seeking a declaration that the Policy does not provide coverage for the automobile accident, that Integon has no duty to defend or indemnify in the Underlying Action, and that the Policy is deemed void. Price removed the action to this court on October 17, 2019. On November 26, 2019, Price answered Integon's complaint, asserted various affirmative defenses, and filed a counterclaim seeking a declaration that Integon has a duty to defend and indemnify Gomez and Mejia in the Underlying Action. ECF No. 5. The court subsequently permitted Price to amend her affirmative defenses to add the defense of waiver and estoppel. The basic theory behind those defenses is that Integon cannot continue to accept premiums from Gomez, which Price alleges is happening, while simultaneously asserting that the Policy is void.

Price filed a motion to compel on April 24, 2020. ECF No. 35. Integon responded on May 8, 2020, ECF No. 37, and Price replied on May 29, 2020, ECF No. 45. The court held a telephonic hearing on the motion on July 10, 2020. The motion is now ripe for review.

## II.   STANDARD

Pretrial discovery is governed by Rule 26 of the Federal Rules of Civil Procedure. "The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case." Mach. Sols., Inc. v. Doosan Infracore Am. Corp., 323 F.R.D. 522, 526 (D.S.C. 2018).

Parties are permitted to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information sought is relevant if it 'bears on [or] reasonably could lead to another matter that could bear on, any issue that is in or may be in the case.'" Ferira v. State Farm Fire & Cas. Co., 2018 WL 3032554, at *1 (D.S.C. June 18, 2018) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). "[I]t is well understood that pursuant to Rule 26(b)(1) relevancy is construed very liberally." Nat'l Credit Union Admin. v. First Union Capital Markets Corp., 189 F.R.D. 158, 161 (D. Md. 1999). In determining proportionality, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

### III.   DISCUSSION

Price raises issues with Integon's responses to several of her discovery requests. The court will address each in turn.

**A. Discovery Request Numbers 1, 2, 3, 10, and 11**

These requests are all related to the topic of underwriting. Request Number 1 asks Integon to "[p]rodue a copy of the underwriting file, including the names of all persons who participated in the underwriting process for the policy when first issued and then when renewed." ECF No. 35-1 at 2. Similarly, Request Number 11 asks for information about the renewal of the Policy, including a request for a copy of the Policy, the Application, and the underwriting file. Integon previously objected to these requests,

but since the court allowed Price to assert the defenses of waiver and estoppel, Integon admits that these requests are now relevant and agrees to produce the underwriting file from the date of the incident through the date that Price requested the file. At the hearing, Price's counsel confirmed that this issue was resolved.

In a portion of request number 1 and in request number 3, Price asks for the names of the people who "participated in the underwriting process" and the names and position of the people "involved in the decision" to issue the Policy and to renew it, respectively, and request number 10 asks "what process is undertaken by [Integon] after the policy application is submitted prior to the issuance of the policy?" and requests documents related to the process. ECF No. 35-1 at 2–3. Integon explains that its underwriting process is automated, meaning no individual person participated in the underwriting process. According to Integon, an agent takes the information provided in the Application, enters it into Integon's computer system, and the system underwrites the policy. Integon also explains that Gomez did not speak to any Integon employee when she bought the Policy or modified it. Integon further notes that Gomez expanded her discovery request in her motion to compel by asking for "the names and positions of those individual who were involved in implementing and administering the underwriting process." ECF No. 35 at 8.

Price argues that Integon cannot hide behind its automated process and there must be people who can testify about how Integon assesses and underwrites risks. Price explains that even if the process is automated, people have to be involved in deciding what criteria would be used to assess and underwrite risks. The problem is that request numbers 1 and 3 don't ask for that information. They ask for the people "who

7

participated in the underwriting process for the policy when first issued and when renewed" and "the name and position of each person involved in the decision to issue the subject policy and renew the subject policy and the role each had." ECF No. 35-1 at 2. In other words, the requests are worded such that they seek information about people who participated in the actual underwriting, which Integon states is automated, as opposed to how Integon's underwriting process works. Therefore, the court denies the motion to compel as to the relevant portion of discovery request number 1 and request number 3.

However, discovery request number 10 does go to the heart of the information Price wants—how the underwriting process works and documents related to the process. This applies to how the automated process works, and it could also encompass the decisions that were made on how the automated underwriting process should work. Integon objected to this request by arguing that the underwriting process is irrelevant to the issue here—a coverage determination—and claiming that its underwriting process is proprietary.

Price also requests a copy of the underwriting guide that was in effect at the time the Policy was issued and at the time it was renewed in her discovery request number 2. Integon only produced portions of the guide that it deemed relevant that was in effect at the time the Policy was issued and argued that the rest of that guide and the one at the time the Policy was renewed are irrelevant to the determination of coverage in this case. Since the court permitted Price's addition of the defense of waiver and estoppel, Integon now agrees "to produce the relevant portions of subsequent underwriting guides in effect between the date of [the Application] and the date that Defendant Price requested the underwriting guides." ECF No. 37 at 7–8. Price still takes issue with this, arguing that

8

Integon cannot decide what is relevant and that Integon still has not produced a privilege log as to why it has withheld some of this information.

The main question here is whether Integon's underwriting process and guides are relevant to the issues in this case. Price relies on Baker v. Travelers Ins. Co., 207 F. Supp. 3d 1246 (N.D. Ala. 2016), to show that underwriting is relevant to Integon's misrepresentation claim. An Alabama statute provides that misrepresentations shall not prevent recovery under an insurance policy unless:

> The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Ala. Code § 27-14-7(a)(3). Baker held that "an insurer relying on § 27-14-7(a)(3) has the burden of demonstrating that its underwriting guidelines in dealing with similar misrepresentations are universally applied." 207 F. Supp. 3d at 1253. This requires "evidence of a universal application of its underwriting policy or similar situations in which it denied coverage." Id. As such, Price argues, Integon will be required to show that its underwriting guidelines and processes universally apply to misrepresentations like the one allegedly made by Gomez in order to prove its misrepresentation claim.

Integon argues that Price's reliance on Baker is misplaced because § 27-14-7(a)(3) is only one of three theories of misrepresentation under the statute. The other two theories prevent recovery under an insurance policy when the misrepresentation is fraudulent or when the misrepresentation is "[m]aterial either to the acceptance of the risk or to the hazard assumed by the insurer." § 27-14-7(a)(1)–(2). Neither of these theories require a showing of universal application of the insurer's underwriting guide or

9

processes. Integon also notes that it can pursue its claim of misrepresentation through the terms of the Policy, as the Policy states that it will be voided if the insured fails to list a driver on the Application, and through the use of common law misrepresentation. Price argues that regardless of the theory under which Integon will seek to prove its case, Integon will have to show that Gomez's alleged misrepresentation was "material", which under Alabama law means that:

> the fact concealed would have shown the liability of the insurer for the loss to be greater than appeared upon the facts disclosed, and would, in consequence, have induced a rational underwriter, governed by principles presumed to govern prudent and intelligent underwriters in practice, to have rejected the risk or accepted it only at an increased premium.

Clark v. Alabama Farm Bureau Mut. Cas. Ins. Co., 465 So. 2d 1135, 1139 (Ala. Civ. App. 1984). But the court understands this inquiry to be into how the type of misrepresentation at issue would have affected the underwriting of the Policy. Such an inquiry only requires underwriting information about listing another driver on the Policy and the failure to do so, and it appears that Integon has or is willing to produce this information.

As such, the court is unconvinced that all of Integon's underwriting process and guidelines are relevant to Integon's claims. They could only be relevant if Integon pursed the theory of misrepresentation discussed by Price. If Integon decides to pursue that theory and fails to produce the necessary underwriting information, then Integon simply won't be able to prove its claim. But there are clearly other theories of misrepresentation that Integon can pursue to which the entirety of its underwriting guide and processes are not relevant.

The court also fails to see how this information relevant to Price's affirmative defense of waiver and estoppel. To prove those defenses, Price will simply need to show that Integon continued to accept Gomez's premiums after Integon learned of Gomez's alleged misrepresentation. See Henson v. Celtic Life Ins. Co., 621 So. 2d 1268, 1277 (Ala. 1993) ("[I]t is settled that acceptance of premiums by an insurer, after learning of a breach of a condition or ground for forfeiture, normally constitutes a waiver or estoppel."). The court fails to see how the entirety of Integon's underwriting process and underwriting guides are relevant to this inquiry.

Finally, Price notes that she found Integon's 2017 underwriting guide on a website and that a confidentiality order is in place, meaning there is no reason to preclude production of the underwriting guides based on proprietary information. Integon responds by arguing that a confidentiality order does not mean a party must produce irrelevant information and that Integon did not authorize any public disclosure of its underwriting guide. The court agrees with Integon and finds that neither of these facts weight in favor of producing the entire underwriting guide or underwriting processes.

In sum, the court finds as moot or denies request number 1, denies request numbers 2, 3, and 10, and finds as moot request number 11.

### B. Discovery Request Numbers 4 and 12

These requests relate to Integon's coverage decision. Request number 4 asks for "the name and position of each person involved in the decision to deny coverage, and the role each had." ECF No. 35-1 at 2. Request number 12 asks for "all documents related to the denial of coverage for this action." Id. at 3. Integon's response was that it had not yet denied coverage and is operating under a reservation of rights in the Underlying

11

Action, meaning it had no documents responsive to these requests. Price argues that while Integon may not have officially denied coverage, Integon has clearly done some sort of investigation of the claim in order to argue that the Policy is void and should be rescinded. Integon notes that Price's argument indicates an expectation of information beyond the scope of these requests. Integon also argues that any information about its investigation is protected work product.

The court agrees with Integon. Price requested information about Integon's denial of the claim. Integon has not yet denied the claim. If Price seeks information about Integon's investigation of the claim, Price must request that information. As her requests are worded now, they simply aren't broad enough to include that information because they are premised on a claim denial that has not yet occurred. Therefore, the court denies the motion to compel as to these two requests.

### C. Discovery Request Numbers 5 and 7

Price's requests seek production of copies of Gomez's identification presented to Integon when Gomez submitted the Application. Integon explained that it does not possess these copies and that an insurance agent performs an identification verification but that Integon does not require copies of identification to be sent to Integon. In her reply brief, Price accepts this explanation, so these requests are moot.

### D. Discovery Request Number 8

Price's request states "[a]s to the surcharge [Integon] charges when an Undeclared Driver is discovered, set forth any schedule of such charges, and all documents related to what to charge, and whether to cancel said policy or charge the surcharge." ECF No. 35-1 at 3. The theory behind this request appears to be that Integon will charge a surcharge

if it discovers a driver who has not been declared on the Policy, and Price is attempting to determine how Integon decides whether to charge the surcharge or void the Policy for a material misrepresentation. Integon claims that the application of the surcharge is determined by an automated process, that there is no schedule of such charges, and that Gomez was not charged the surcharge, meaning the issue is irrelevant to this lawsuit.

This information could be relevant if Price were pursuing a bad faith theory to show that Integon is treating Gomez differently than other insureds who don't declare a driver by trying to void the Policy when it normally charges an Undeclared Driver surcharge in similar situations. However, this is not a bad faith action. Instead, it is a declaratory action to determine whether coverage exists. Price again relies on Baker to argue that Integon will have to show that it applies its underwriting process universally, but as explained above, that is more than one way that Integon can prove misrepresentation, and if Integon choses to pursue that theory of misrepresentation, it will have to produce the evidence to carry its burden of proof or risk its claim being dismissed.

Price also argues that Integon inserted the issue of whether the Policy should be voided based on failing to disclose a driver and cannot now withhold evidence of how that decision is made, citing ContraVest v. Mt. Hawley, 273 F. Supp. 3d 607 (D.S.C. 2017). Clearly that case has no application here, as it deals with attorney-client privilege in bad faith actions. In addition, the court fails to see how this information is relevant to Price's affirmative defenses. Again, all Price will have to prove is that Integon continued to accept Gomez's premiums once it learned of Gomez's misrepresentation. Whether or not Gomez should have been charged an Undeclared Driver surcharge or had her policy

voided does not relate to that issue. As such, the court denies the motion as to this discovery request.

### E. Discovery Request Number 9

This request asks "In the calendar years 2017 and 2018, for each [y]ear, how many policies were issued where an Unverifiable Driving Record Surcharge was applied?" ECF No. 35-1 at 3. Integon argues that this request is irrelevant to the coverage determination, seeks proprietary information, and that the request improperly seeks discovery to support a third-party bad faith claim against Integon. According to Integon, the fact that Gomez was charged an Unverifiable Driving Record surcharge has no bearing on whether coverage exists, and the number of other policies that applied the surcharge is also not relevant to coverage. Price believes this information to be relevant to show Integon's normal course of business in these situations—cancel the policy, declare it void, reform the policy, or charge the surcharge. She explains that Integon insured two individuals who did not present a driver's license to obtain the Policy (Gomez and Mr. Hernandez) and that makes it illogical for Integon to claim that it would not have issued the Policy if it knew that there was a third unlicensed individual with access to the vehicle (Mejia).

The crux of Integon's material misrepresentation argument isn't that Mejia didn't have a driver's license or an unverifiable driving record. It's that Gomez failed to list Mejia as a driver on the Application. As such, the fact that Gomez, Mr. Hernandez, and Mejia may not have a driver's license has no bearing on the materiality of Gomez's alleged misrepresentation. The materiality comes from excluding from the Application a person who should have been included, regardless of whether that person has driver's

14

license or not. Moreover, as discussed above, Integon's normal course of business could be relevant to a bad faith action, but this is not a bad faith action. As such, the court denies the motion as to this request.

### F. Discovery Request Numbers 13 and 14

These requests relate to the Underlying Action, asking Integon to "[p]roduce copy of the claim file related to the underlying tort claim" and asking "[w]hat person ordered the accident report for the subject wreck, and when?" along with production of documents related to the same. ECF No. 35-1 at 3. Price argues that this information is relevant to Integon's claims of lack of notice, prejudice, lack of knowledge, and lack of cooperation. As a reminder, Integon alleges that Gomez and Mejia did not notify Integon of the accident and failed to cooperate in Integon's investigation, which prejudiced Integon and hindered its ability to conduct its investigation of the loss. Therefore, Price is looking for information related to these allegations. Integon claims that this information is not relevant, attorney-client privileged, and protected work product.

As to relevancy, Integon claims that evidence of its lack of notice of the accident is that no evidence exists. In other words, Integon claims there is no evidence because there was no notice. At the hearing, Price's counsel noted that Integon had not yet produced a claims activity log, which would show that when Integon received notice and opened the claim. The court agrees that the claims activity log would provide evidence of notice. With regard to Gomez's and Mejia's cooperation, the court fails to see how Integon can prove that they did not cooperate without producing some evidence of the claim file related to the Underlying Action. Presumably that claim file would contain Integon's investigation notes, and those notes would reflect whether Gomez and Mejia

15

cooperated. As such, this information is relevant to Integon's allegation that Gomez and Mejia failed to cooperate.

The issue of work product, however, poses a catch-22. Integon argues that the entire claim file is protected work product because it was prepared in anticipation of litigation. In the context of insurance, "[f]or the work product doctrine to apply, '[t]he document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation.'" State Farm Fire & Cas. Co. v. Admiral Ins. Co., 225 F. Supp. 3d 474, 483 (D.S.C. 2016) (quoting Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992)). Integon contends that it opened its claim file when it received a letter from Price's counsel, at which point Integon was put on notice that there was a potential claim that could lead to litigation. As such, Integon argues, the entire claim file is protected work product.

While that may be true, Integon cannot claim that Gomez and Mejia failed to cooperate with Integon's investigation and simultaneously claim any evidence of that lack of cooperation is protected work product. In a similar vein, for Integon to prove that it did not receive notice of the claim until August 2018, Integon must produce some evidence to show that to be true and cannot instead rely on the lack of evidence and work product protections. The court finds it impossible for Integon to pursue its claims of lack of notice and failure to cooperate while claiming work product protection over all the information that would be used to prove those claims. As such, the court suggests that Integon either reconsider its work product assertion or reconsider its pursuit of those claims. If Integon chooses to continue pursuing those claims, the court finds that

information in the claim file related to when Integon received notice of the claim and any cooperation or lack thereof from Gomez and Mejia to be relevant and must be produced, including the claims activity log. Integon is free to claim work product or attorney-client privilege over portions of the claim file where those protections are warranted, and if necessary, Price is free to challenge those designations. As such, the court grants the motion to compel as to these two requests to the extent that they request information that is relevant to the notice and lack of cooperation claims.

### G. Discovery Request Numbers 16 and 17

In request number 16, Price requests evidence of other situations similar to Gomez's, asking for copies of the complaint filed in any action involving Integon in which there was an allegation that a person was not listed on a policy application when Integon claims he or she should have been. ECF No. 35-1 at 3. Request number 17 states:

> As to each instance where the Plaintiff denied coverage based upon the insured's alleged failure to disclose a person on the application who should have been, based upon a construction of any grammatical form of the terms reside, residents, live, live with, living, dwell, dwell with, household member, household, or any other term in the application, produce the following:
>     a. Each application;
>     b. Each reservation of rights notification;
>     c. Each denial of coverage notification;
>     d. Each complaint filed in any litigation wherein the terms above were at issue

Id. at 4. Price argues that this information is relevant because Integon will have to prove that it would not have issued the Policy if it had known all of the material facts, i.e., that Mejia used the vehicles on the Policy, and that Integon employs that policy universally, citing Baker. However, again, that is only one of the methods under which Integon could

17

prove a material misrepresentation. Price expresses frustration that Integon will not commit to a legal theory and argues that she is permitted to test any theory in order to defend herself. However, if Integon wants to assert a theory of misrepresentation according to Baker, it will have to produce this evidence to satisfy its burden if it. Otherwise, Integon won't be able to prove its theory. Any other relevance of this information goes to a bad-faith action, which does not exist here. Therefore, the court denies the motion as to these requests.

### H.  Discovery Request Number 21

Request number 21 asks for the email address of Integon's claims department. Price withdraws this request in her reply brief, so this issue is moot.

### I.  Discovery Request Number 22

Price requests the names, positions, and departments of all persons who receive emails addressed to CLAIMD@NGIC.com in 2017 and 2018. Price withdraws this request in her reply brief, so this issue is moot.

### J.  Discovery Request Numbers 23–25

These requests relate to Integon's systems and organizational structure. Request number 23 asks for information about NGIC's policy administration system, claims system, underwriting system, and other technology systems, specifically (1) the name and current position of the person responsible for the integration of the systems in 2017 and 2018 and (2) the date upon which those systems became properly integrated. Request numbers 24 and 25 ask for organizational charts for Integon's technology systems and organizational structure, respectively. Price contends that this information is relevant because the officer at the scene of the car accident spoke to someone at Integon right after

the accident occurred, which Price believes to constitute notice, but Integon claims that person was in customer service, not the claims department, meaning this call did not serve as notice.  Price argues that Integon cannot argue that it did not receive notice because the officer called the wrong number and then shield itself from inquiries as to how it communicates within its organization, suggesting that the customer service department could have passed along information of the accident to the claims department.

Integon argues that this information is not relevant to the coverage dispute and that "[t]he question of notice does not justify Defendant Price's fishing expedition" into Integon's organizational structure.  Integon also explains that the phone call was not initiated by Mejia and the purpose was not to report a claim.  However, the Policy requires that Integon "be notified promptly of how, when and where the accident or loss happened."  ECF No. 1-1 at 29.  It does not require the insured or the person seeking coverage to notify of an accident, i.e., Mejia, nor does it clarify which department must be notified.  Instead, it states that "we" must be notified, and "we" is defined as "the Company defined on the Declarations Page", which is Integon.  Id. at 28.  Therefore, whether the phone call made at the scene of the accident eventually reached the claims department is relevant regardless of who made the call or what the purpose of the call was.  However, the court finds Price's request to be too broad for this purpose and should be more narrowly tailored to discover the relevant information.  Price does not need to know everything about Integon's technical systems and organizational systems to know if customer service communicates the substance of its calls to the claims department.  Therefore, the court grants the motion as to this request but only as to the technical systems and organizational systems that would facilitate communications between the

department that was allegedly called on the day of the accident and the claims department.

## IV.  CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART AND DENIES IN PART** the motion.

**AND IT IS SO ORDERED.**

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**July 20, 2020**
**Charleston, South Carolina**