**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| INTEGON NATIONAL INSURANCE COMPANY, | ) )  ) | |
| Plaintiff, | ) ) | No. 2:19-cv-02958-DCN |
| vs. | ) ) | **ORDER** |
| ALICIA MEJIA GOMEZ, BRIAN MONROY MEJIA, and MARGARET MITCHELL PRICE, as personal representative of the Estate of Alicia Maria Mitchell, | ) ) ) ) ) | |
| Defendants. | ) ) | |

The following matter is before the court on (1) defendant Margaret Mitchell Price's ("Price") motion to compel, ECF No. 61; (2) defendant Brian Monroy Mejia's ("Mejia") motion to set aside default, ECF No. 62; (3) defendant Alicia Mejia Gomez's ("Gomez") motion to set aside default, ECF No. 63; and (4) plaintiff Integon National Insurance Company's ("Integon") motion for default judgment, ECF No. 65. For the reasons set forth below, the court grants the motions to set aside default, denies the motion for default judgment, and grants in part and denies in part the motion to compel.

## I.  BACKGROUND

This case arises out of a fatal automobile accident.  On January 5, 2018, Mejia was driving a 2003 Ford Expedition in Charleston County, South Carolina when he was involved in an accident (the "Accident") that resulted in the death of pedestrian Alicia Maria Mitchell ("Mitchell").  Price is the personal representative of the estate of Mitchell.

The Ford Expedition was owned by Mejia's mother, Gomez, and covered by an automobile insurance policy ("the Policy") issued by Integon.

Price filed a wrongful death suit in this court against Gomez and Mejia, Price v. Mejia, 18-cv-02673-DCN ("the Underlying Action"). Integon filed the instant action in the Dorchester County Court of Common Pleas seeking a declaration that the Policy does not provide coverage for the Accident, that Integon has no duty to defend or indemnify in the Underlying Action, and that the Policy is void. Integon makes several allegations to support its contention that the Policy is void. See ECF No. 1-1. First, it argues that Gomez made a material misrepresentation on the Policy application by not listing Mejia as a resident of her household, making the policy void ab initio. Id. at ¶¶ 16-22, 33. Second, Integon argues Gomez and Mejia failed to notify Integon of the Accident and failed to cooperate with Integon's investigation of the Accident, as required under the Policy. Id. ¶¶ 24-33. Price removed the action to this court on October 17, 2019. On November 26, 2019, Price answered Integon's complaint, asserted various affirmative defenses, and filed a counterclaim seeking a declaration that Integon has a duty to defend and indemnify Gomez and Mejia in the Underlying Action. ECF No. 5. The court subsequently permitted Price to amend her affirmative defenses to add the defense of waiver and estoppel. ECF No. 34. The basic theory behind those defenses is that Integon cannot continue to accept premiums from Gomez, which Price alleges is happening, while simultaneously asserting that the Policy is void.

On January 6, 2020, Integon filed certificates of service of summons and complaint on Gomez and Mejia. ECF Nos. 8, 9. In those certificates of service, Ronald D. White stated that he "personally served" copies of the summons and complaint on

Gomez and Mejia "by leaving a copy of the same with the Defendants" on October 29, 2019. ECF Nos. 8, 9. However, Gomez and Mejia did not file a responsive pleading. On May 29, 2020, Attorney Donald H. Howe ("Attorney Howe") filed a notice of appearance, indicating that he represents Gomez and Mejia in this declaratory judgment action. ECF No. 44. On July 14, 2020, Integon moved for entry of default as to Gomez and Mejia. ECF No. 55. That same day, the clerk entered default as to Gomez and Mejia. ECF No. 57.

On July 21, 2020, Price filed the instant motion to compel, raising various issues with Integon's responses to her discovery requests. ECF No. 61. Integon responded on August 11, 2020, ECF No. 69, and Price replied on August 28, 2020, ECF No. 84.

On July 27, 2020, Gomez and Mejia filed the instant motions to vacate entry of default as to Gomez and Mejia, along with their proposed answers and counterclaims ECF Nos. 62, 62-3, 63, 63-3. On August 10, 2020, Integon responded in opposition to the motions. ECF No. 68. Price responded in support of the motions on August 25, 2020. ECF No. 73. Also on August 25, 2020, Gomez and Mejia replied, adopting Price's response. ECF Nos. 74, 75. On September 1, 2020, Integon replied to Price's response. ECF No. 87. On September 2, 2020, by consent of the parties, Integon filed a sur-reply to address the service arguments in Gomez and Mejia's replies. ECF No. 93. On September 15, 2020, by permission of the court, Price submitted an additional filing to address Integon's challenge to her standing. ECF No. 98. On September 24, 2020, by consent of the parties, Integon replied to Price's September 15 filing. ECF No. 105.

On August 4, 2020, Integon filed the instant motion for default judgment.  ECF No. 65.  On August 26, 2020, Price responded in opposition, ECF No. 72, and on September 1, 2020, Integon replied, ECF No. 88.

These motions have been fully briefed and are now ripe for review.

## II. STANDARD

### A. Motions to Set Aside Default

Federal Rule of Civil Procedure 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."  Fed. R. Civ. P. 55(c).  This "good cause" standard is liberally construed "in order to provide relief from the onerous consequences of defaults . . . ."  Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987); see also Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969) ("Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits.").  The decision to set aside an entry of default is "committed to the sound discretion of the trial court."  Lolatchy, 816 F.2d at 954.

The Fourth Circuit has identified several factors that a court should consider when determining whether to set aside an entry of default: "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic."  Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 204–05 (4th Cir. 2006).  When considering these factors, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter,

defaults be avoided and that claims and defenses be disposed of on their merits." <u>Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.</u>, 616 F.3d 413, 417 (4th Cir. 2010). "Generally, a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense." <u>Consolidated Masonry & Fireproofing, Inc. v. Wagman Const. Corp.</u>, 383 F.2d 249, 251 (4th Cir. 1967).

### B. Motions for Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of a default judgment when a defendant fails to plead or otherwise defend in accordance with the Rules." <u>United States v. Moradi</u>, 673 F.2d 725, 727 (4th Cir.1982) (internal citations omitted). "Although the clear policy of the Rules is to encourage dispositions of claims on their merits . . . , trial judges are vested with discretion, which must be liberally exercised, in entering such judgments and in providing relief therefrom." <u>Id.</u> (internal citations omitted).

### C. Motions to Compel

Pretrial discovery is governed by Rule 26 of the Federal Rules of Civil Procedure. "The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case." <u>Mach. Sols., Inc. v. Doosan Infracore Am. Corp.</u>, 323 F.R.D. 522, 526 (D.S.C. 2018). Parties are permitted to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information sought is relevant if it 'bears on [or] reasonably could lead to another matter that could bear on, any issue that is in or may be in the case.'" <u>Ferira v. State Farm Fire & Cas. Co.</u>, 2018 WL 3032554, at *1 (D.S.C. June 18, 2018) (quoting

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  "[I]t is well understood that pursuant to Rule 26(b)(1) relevancy is construed very liberally."  Nat'l Credit Union Admin. v. First Union Capital Markets Corp., 189 F.R.D. 158, 161 (D. Md. 1999).  In determining proportionality, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

### III. DISCUSSION

Before addressing the merits of the motions before the court, the court must first address two procedural arguments made by Integon.

First, Integon argues that Price does not have standing to file anything responsive to Gomez and Mejia's motions to set aside entry of default or Integon's motion for default judgment.  As Price points out, Integon does not provide any authority for its proposition that a non-defaulting defendant lacks standing to respond to a plaintiff's motion for default judgment as to other defendants.  See generally ECF No. 87, 88.  The court likewise has not uncovered any cases stating that a non-defaulting party may not respond.  On the contrary, courts have commonly permitted and considered responses from non-defaulting parties when considering such motions.  See, e.g., McGraw v. Corizon Health, Inc., 2019 WL 7584322, at *2 (S.D. Ind. Mar. 1, 2019); Fifth Third Bank v. Morales, 2017 WL 4012120, at *1 (D. Colo. Sept. 12, 2017); Scottsdale Ins. Co. v. Bounds, 2012 WL 1576105, at *5 (D. Md. May 2, 2012); Tennessee  Farmers Mut. Ins. Co. v. Tim W. Smith Properties, LLC, 2012 WL 956182 (E.D. Ark. Mar. 21, 2012);

Northland Ins. Co. v. Cailu Title Corp., 204 F.R.D. 327, 328 (W.D. Mich. 2000).

Indeed, the Southern District of Alabama went so far as granting a non-defaulting

defendant's motion to set aside a default judgment against his co-defendant.  N.

Assurance Co. of Am. v. Bayside Marine Constr., Inc., 2009 WL 10695450, at *1 (S.D.

Ala. Jan. 12, 2009).  As such, the court will consider Price's filings with respect to these

motions.

Second, Integon argues that the court should not consider Gomez and Mejia's

replies in support of their motions to vacate entry of default because they were filed after

the deadline for submitting reply briefs.  ECF No. 93 at 1.  Gomez and Mejia's replies (1)

"join[ed]" in Price's response; (2) revised their respective proposed answers and

counterclaims to include the service issue raised in Price's response; and (3) attached a

declaration of Gomez.  The court acknowledged supra that it would consider Price's

response, so whether Gomez and Mejia "join" in this response is a moot issue.  Price's

response also raised the service issue, so the court will consider it.  Accordingly, the

timeliness of Gomez and Mejia's replies only impacts the court's consideration of the

Gomez declaration.

> Local Civil Rule 7.07 (D.S.C.) provides that
>
> Replies to responses are discouraged.  However, a party desiring to reply to matters raised initially in a response to a motion or in accompanying supporting documents shall file the reply within seven (7) days after service of the response, unless otherwise ordered by the Court.

Still, Local Civil Rule 1.02 (D.S.C.) provides that, "For good cause shown in a particular

case, the Court may suspend or modify any Local Civil Rule."  See Hilton Groups, PLC v.

Branch Banking & Tr. Co. of SC, 2007 WL 2022183, at *1 (D.S.C. July 11, 2007).

Gomez and Mejia replied on August 25, 2020, fourteen days after service of Integon's

response. ECF Nos. 74, 75. Thus, Gomez and Mejia's replies, as articulated as "repl[ies] to Plaintiff's Response," were untimely. Nevertheless, Gomez and Mejia's replies primarily addressed and adopted new arguments made in Price's response, not Integon's. Gomez and Mejia's replies were filed on August 25, 2020—the same day Price filed her response. Thus, if Gomez and Mejia's replies had been directed at Price's response, they would have been filed well within the Local Civil Rule 7.07 deadline. The court will not disregard Gomez and Mejia's reply, and, by extension, the attached Gomez declaration, based on this procedural technicality.

### A. Motion to Set Aside Default

In considering whether to set aside the entries of default against Gomez and Mejia, the court must apply the Payne factors to determine whether there is good cause under Rule 55(c). See Payne, 439 F.3d at 204–05. In so doing, the court is mindful of the Fourth Circuit's strong preference that defaults be avoided. Additionally, the court notes that the finality interests associated with setting aside a default judgment do not apply here because the court has not entered a default judgment. Colleton Preparatory Acad., 616 F.3d at 420 ("Rule 55(c)'s 'good cause' standard, [] is more forgiving of defaulting parties because it does not implicate any interest in finality.").

### 1. Meritorious Defense

The first Payne factor is whether the moving party has presented a meritorious defense. Payne, 439 F.3d at 204–05. "A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988); Caribbean Indus. Prod., LLC v. Allen Filtration, LLC, 2018

WL 398486, at *3 (D.S.C. Jan. 12, 2018).  "[T]he mere assertion of facts constituting a meritorious defense in a pleading satisfies the requirement of showing a meritorious defense."  Blackwood v. Georgetown Hosp. Sys., 2013 WL 1342523, at *1 (D.S.C. Apr. 2, 2013) (internal quotations omitted) (citing Cent. Operating Co. v. Util. Workers of Am., 491 F.2d 245, 253 n.8 (4th Cir.1974) ("[A] party is not required to establish a meritorious defense by a preponderance of the evidence.")).

    In its complaint, Integon asks the court to declare that the Policy does not provide coverage for the Accident, that Integon has no duty to defend or indemnify in the Underlying Action, and that the Policy is deemed void.  Compl. at 12.  Specifically, Integon argues that (1) Gomez materially misrepresented that Mejia was not a resident of her household by failing to disclose him on her Policy application; (2) Gomez failed to provide Integon notice of the Accident; and (3) Gomez and Mejia failed to cooperate in Integon's investigation of the Accident.  Gomez and Mejia present meritorious defenses to each of these claims in their proposed answers.  ECF Nos. 74-1, 75-1.

    With respect to Integon's material misrepresentation claim, Gomez and Mejia allege in their proposed answers that (1) the policy was ambiguous, ECF Nos. 74-1, 75-1 at ¶ 62; (2) Gomez is not fluent in English and was unable to read the Application, id. at ¶ 8; (3) Gomez truthfully answered all questions asked by the agent who translated the Application, id.; (4) Mejia was not a resident in Gomez's home at all relevant times, id. at ¶ 18; and (5) regardless, Integon waived any misrepresentation by accepting Gomez's premiums, id. at ¶¶ 35, 89.  With respect to Integon's claim that Gomez and Mejia failed to report the Accident, Gomez and Mejia allege in their proposed answer that Mejia spoke to an "agent of Integon" at the scene of the wreck and answered all the agent's questions

truthfully and Integon was notified of all information relevant to the Accident on that date. Id. at ¶¶ 85-87. Integon does not point to any specific instances where Gomez and Mejia "fail[ed] to respond to correspondence and inquiries regarding the subject loss." Compl. at ¶ 30. Nevertheless, Gomez and Mejia allege that they spoke with Integon after the Accident, ECF Nos. 74-1, 75-1 at ¶ 82, and that Integon waived any forfeiture on the ground of this alleged breach by renewing and continuing to accept Gomez's insurance premiums, id. at ¶¶ 84-87.

As an additional meritorious defense, Gomez and Mejia also allege in their proposed answer that "service of process on [] Mejia was deficient." Id. at ¶ 36. The parties argue at great length about whether Mejia was served properly. However, the court need not decide whether service of process was sufficient at this stage. Instead, Gomez and Mejia are only required to allege facts which, if believed, would constitute a defense to Integon's declaratory judgment claim. The court finds that Gomez and Mejia have satisfied this burden, and, accordingly, this factor weighs in favor of vacating the entry of default.

### 2. Reasonable Promptness

The second Payne factor is whether the defaulting party acts with reasonable promptness. Payne, 439 F.3d at 204–05. This factor "must be gauged in light of the facts and circumstances of each occasion and the exercise of discretion by the trial judge will not be disturbed lightly." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982).

Integon argues that Gomez and Mejia did not act with reasonable promptness because they moved to set aside default over eight months after they were served and over two months after Attorney Howe's notice of appearance. While there was certainly

delay in filing any responsive pleading after the alleged date of service, courts also look to when the defaulting party responded to the entry of default and opposing party's motion for default judgment.  Payne, 2019 WL 1058089, at *3 (D.S.C. Mar. 6, 2019); Ashmore v. Melvin, 2016 WL 3610609, at *2 (D.S.C. July 6, 2016) ("Although Defendants failed to timely file a response to Plaintiff's Complaint, they did promptly respond to Plaintiff's Motion for Default Judgment.").  "District courts in the Fourth Circuit have found that a defendant acted reasonably promptly when waiting seventeen, twenty-one, and thirty-two days after default was entered before attempting to set it aside."  Reg'l Med. Ctr. of Orangeburg v. Salem Servs. Grp., LLC, 2020 WL 1956515, at *3 (D.S.C. Apr. 23, 2020).

Here, Gomez and Mejia moved to set aside the defaults against them only thirteen days after the defaults were entered and before Integon moved for default judgment.  The court, mindful that the defaulting party's burden is more forgiving under a Rule 55(c) motion, finds that Gomez and Mejia acted with reasonable promptness in this case.  See LM General Ins. v. Frederick, 2019 WL 689570, at *3 (D.S.C. Feb. 19, 2019) (finding defendant acted with reasonable promptness when default was entered on June 29, the plaintiff moved for default judgment on July 23, and the defendant moved to set aside default on August 1); JTH Tax, Inc. v. Callahan, 2013 WL 3035279, at *9 (E.D. Va. June 6, 2013) (finding the defendant acted with reasonable promptness by moving to set aside entry of default only 16 days after default was entered, even though the defendant "should have more promptly sought out legal assistance"); USF Ins. Co. v. Bullins Painting, Inc., 2012 WL 4462004, at *2 (M.D.N.C. Sept. 25, 2012) (finding reasonable promptness even though the defendant "first consulted an attorney two months after

default was entered and three and a half months after he was notified that [the plaintiff] was seeking default judgment").

### 3. Personal Responsibility

The third Payne factor is the personal responsibility of the defaulting party. Payne, 439 F.3d at 204–05. Price argues that Gomez and Mejia are not personally responsible for their defaults. Specifically, Price argues that the delay after Attorney Howe's notice of appearance, from May 29, 2020 to July 27, 2020, is attributable to Attorney Howe and that Gomez and Mejia cannot be held personally responsible for counsel's error. Price also argues that Gomez and Mejia are not personally responsible because Gomez does not speak or read English and that service of process on Mejia was "likely improper." ECF No. 73 at 10-11. It is true that "justice demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings." Lolatchy, 816 F.2d at 953. Still, the court must consider the personal responsibility of Gomez and Mejia after service and before Attorney Howe's notice of appearance, between October 29, 2019 and May 29, 2020. Contrary to Price's argument, there is no evidence nor assertion from Gomez, other than generally adopting Price's response, that Gomez's default was an innocent result of the alleged language barrier. As such, the court does not find that Gomez's English language ability excuses Gomez from personal responsibility for default in this case. Moreover, it is unclear whether service of process on Mejia was "improper" as alleged. To support this argument, Gomez, Mejia, and Price only cite Attorney Howe's affidavit, alleging that "service on [Mejia] was attempted by service on his mother, [Gomez,] on October 29, 2019." ECF No. 63-2 at ¶ 3. In contrast, Integon has presented

an Affidavit of Service, a Certificate of Service, and an Affidavit of Default all indicating that Mejia was served personally. As such, the court finds that the personal responsibility factor does not weigh in favor of setting aside Gomez and Mejia's defaults.

### 4. Prejudice

The fourth factor is prejudice to the non-moving party. Payne, 439 F.3d at 204–05. Integon contends that it is prejudiced because (1) the delay from Gomez and Mejia filing an answer "eight months after an answer was due," ECF No. 68 at 14; (2) Integon will have to defend against Gomez and Mejia's "bad faith and/or extra-contractual allegations," id.; and (3) Integon would be exposed to potential liability for Gomez and Mejia's costs in defending the case, id. at 15. Gomez and Mejia argue that Integon will not be prejudiced because their defenses are "essentially identically aligned" with Price's defenses in the proceeding action, ECF Nos. 62-1 at 2, 63-1 at 2; and "there will not be the slightest delay in discovery or change in any legal theories," id.

"[D]elay in and of itself does not constitute prejudice to the opposing party," and "no cognizable prejudice inheres in requiring a plaintiff to prove a defendant's liability, a burden every plaintiff assumes in every civil action filed in every federal court." Colleton Prep. Academy, 616 F.3d at 418-19 (citation omitted); see also id. at 419 n.6 ("Entry of default raises no protectable expectation that a default judgment will follow, and a party's belief in the integrity of the system must include, to be reasonable, knowledge that a system of integrity makes exceptions 'for good cause shown.'").

Integon has not demonstrated that it would be prejudiced by a decision to set aside default. Integon does not assert that Gomez and Mejia's delay has made it

impossible, or even more difficult, to present any of its evidence or complete discovery. Instead, Integon simply argues it is somehow prejudiced by the delay itself. The Fourth Circuit has explicitly rejected such an argument. Colleton Prep. Academy, 616 F.3d at 418-19. Integon's claims of prejudice related to Gomez and Mejia's counterclaims for bad faith and attorney costs similarly fail. Though setting aside the default here would require Integon to expend additional time and resources, there is no unfair prejudice in requiring Integon to prove its case against Gomez and Mejia or defend against any counterclaims asserted. See Hummel v. Hall, 868 F. Supp. 2d 543, 561 (W.D. Va. 2012). Integon faces no greater burden that those assumed by every plaintiff in a civil case. Overall, while Integon may be inconvenienced by a decision to set aside default, these inconveniences are "not the type of prejudice contemplated by the rule." Werner v. Carbo, 731 F.2d 204, 207 (4th Cir.1984). As such, this factor weighs in favor of setting aside the default.

### 5. History of Dilatory Action

Integon contends that Gomez and Mejia have a history of dilatory action in this litigation because Attorney Howe did not make an appearance until seven months after service of process and they have yet to file an answer.[1] Gomez and Mejia argue that there is no dilatory action because (1) they filed an answer to the coverage dispute when it was pending in the Northern District of Alabama; (2) service as to Mejia is questionable; and (3) Gomez is unable to read or speak English. ECF No. 73 at 13.

---

[1] Integon also argues that Gomez and Mejia's failure to report the Accident to Integon and failure to cooperate in Integon's investigation of the Accident evinces their history of dilatory action. However, whether Gomez and Mejia reported the Accident or failed to cooperate are disputed facts that the court need not resolve at present. Instead, the court only considers Gomez and Mejia's history of dilatory action in the context of the present litigation.

Still, Gomez and Mejia concede that "there has undoubtedly been some delay in Gomez's and Mejia's participation in this declaratory judgment action."  Id.

Failing to timely answer a summons and complaint does not alone establish a history of dilatory action.  Morgan v. Wells Fargo Bank, N.A., 2017 WL 11285493, at *4 (D.S.C. Jan. 11, 2017) (Although the defendant failed to timely respond to the complaint, "this one instance of dilatory conduct does not weigh in [the plaintiff's] favor."); Cousar v. M&R Carriers 1, Inc., 2016 WL 3087008, at *2 (D.S.C. June 2, 2016) ("[T]here is no evidence of previous dilatory action by the [d]efendants, absent failing to answer [the plaintiff]'s summons and complaint.").  Moreover, the Fourth Circuit considers whether the dilatory action was on the part of the attorney, rather than the defaulting party.  See Lolatchy, 816 F.2d at 953; Pinpoint IT Servs., LLC v. Atlas IT Exp. Corp., 812 F. Supp. 2d 710, 727 (E.D. Va. 2011) ("[I]f the dilatory action is solely the fault of the attorney and the defendant is blameless, the Court will favor setting aside default.")

Here, the court does not find a history of dilatory action at this early stage of litigation.  As Integon points out, a court in the Eastern District of North Carolina found a history of dilatory action where the defendant did not contact counsel until six months after service of process, counsel did not file an appearance for another month, and counsel did not move to set aside default for roughly a month after default was entered. Prescott v. MorGreen Solar Sols., LLC, 352 F. Supp. 3d 529, 539 (E.D.N.C. 2018).  Of course, this court is not bound by the Prescott decision.  Moreover, the facts in Prescott can be distinguished from the present case.  In Prescott, the defendant delayed in contacting counsel, in answering the complaint, and in moving to set aside default.  Id. While the present case is similar in the delay in appearance of counsel, here there was no

delay in moving to set aside default.  Instead, as discussed <u>supra</u>, Gomez and Mejia

moved to set aside default and attached their proposed answers and counterclaims only

thirteen days after entry of default and before the motion for default judgment.

     The court finds a case in this district more instructive.  In <u>Campodonico v.</u>

<u>Stonebreaker</u>, the court found no history of dilatory action even though defendant

"delayed giving the summons and complaint to his attorney," which resulted in

defendant's failure to timely file a responsive pleading.  2016 WL 1064490, at *2 (D.S.C.

Mar. 15, 2016).  Similarly, here, Gomez and Mejia delayed in retaining counsel, which

resulted in the default at issue.  However, the court does not find that this amounts to a

history of dilatory action, and this factor does not weigh against Gomez and Mejia.

### 6. Availability of Sanctions Less Drastic

     The sixth and final <u>Payne</u> factor is the availability of less drastic sanctions.

<u>Payne</u>, 439 F.3d at 204–05.  Both parties acknowledge that less drastic sanctions are

available.  <u>See</u> ECF 68 at 15.  However, Integon argues that "neither party has requested

any alternate sanction" and that "[e]ntry of [d]efault is a proportional consequence" of

Gomez and Mejia's failure to answer the complaint.  <u>Id.</u> at 15-16.  The court is

unconvinced by this argument.  Because there are far less drastic sanctions than default

available, this factor weighs in favor of setting aside the default.  <u>See</u> <u>Cousar v. M&R</u>

<u>Carriers 1, Inc.</u>, 2016 WL 3087008, at *2 (D.S.C. June 2, 2016); <u>Colleton Preparatory</u>

<u>Acad.</u>, 616 F.3d at 418 (suggesting that a motion for an award of attorney's fees and costs

to a plaintiff in opposing the motion to set aside an entry of default or default judgment

could be appropriate); <u>Surf's Up, LLC v. Rahim</u>, 2016 WL 1089393, at *1 (D.S.C. Mar.

21, 2016) ("If any sanction is warranted, it is probably simply requiring Defendants to reimburse Plaintiff for the cost of obtaining the default.").

In sum, the court does not take Gomez and Mejia's failure to abide by the Federal Rules of Civil Procedure lightly, but, upon consideration of the relevant factors, this court finds that there is good cause to set aside the entries of default and allow the instant action against Gomez and Mejia to proceed on its merits. Therefore, the court sets aside the entries of default against Gomez and Mejia.

### B. Motion for Default Judgment

The standard of analysis for entering a default judgment mirrors the "good cause" analysis, performed above, for setting aside an entry of default. See F.D.I.C. v. Danzig, 1993 WL 478842, *2 (4th Cir. November 22, 2003) ("Where, as here, a court is ruling upon a plaintiff's application for a default judgment, it properly treats the defendant's opposition as a motion to set aside the entry of a default, which is assessed under Rule 55(c)'s good cause standard.") (citing Meehan v. Snow, 652 F.2d 274, 276 (2d Cir.1981)). Accordingly, for the reasons set forth above and because the Fourth Circuit prefers adjudications on the merits of a case, the court denies the motion for entry of default judgment. See Ashmore, 2016 WL 3610609, at *2.

### C. Motion to Compel

In her motion to compel, Price raises various issues with Integon's responses to her discovery requests. In her reply, Price withdrew her motion to compel as to request numbers 8 and 9. ECF No. 84 at 1, n.1. As such, only discovery requests number 2, 3, 5(c), 11-13, 16, 17(d), and 20 are at issue. The court addresses each request below.

### 1. Discovery Request Numbers 2, 3, 12, and 13

Price addresses discovery request numbers 2, 3, 12, and 13 together, claiming they all relate to the prejudice claimed by Integon from the alleged lack of notice and cooperation. Integon objects to these requests on the grounds of work-product doctrine and relevancy. ECF No 69 at 10-11. Specifically, Integon argues that, to the extent these requests would require Integon to produce any documents contained in Integon's claim file opened on August 3, 2018, the work-product doctrine applies because the claim file contains Integon's "mental impression and work product prepared in anticipation of litigation." Id. at 10. Integon also argues that these requests are not relevant because they relate only to a "non-existent bad faith/extra-contractual liability claim" and not the question of coverage. Id. at 11.

The court reemphasizes that the work-product doctrine does not apply to the entirety of the claim file. The court has already ruled to that effect in its July 20, 2020 order granting in part and denying in part Price's first motion to compel (the "July Order"). As the court explained in the July Order,

> Integon cannot claim that Gomez and Mejia failed to cooperate with Integon's investigation and simultaneously claim any evidence of that lack of cooperation is protected work product. In a similar vein, for Integon to prove that it did not receive notice of the claim until August 2018, Integon must produce some evidence to show that to be true and cannot instead rely on the lack of evidence and work product protections. The court finds it impossible for Integon to pursue its claims of lack of notice and failure to cooperate while claiming work product protection over all the information that would be used to prove those claims. As such, the court suggests that Integon either reconsider its work product assertion or reconsider its pursuit of those claims. If Integon chooses to continue pursuing those claims, the court finds that information in the claim file related to when Integon received notice of the claim and any cooperation or lack thereof from Gomez and Mejia to be relevant and must be produced, including the claims activity log. Integon is free to claim work product or attorney-client privilege over portions of the claim file where those protections are

warranted, and if necessary, Price is free to challenge those designations. As such, the court grants the motion to compel as to these two requests to the extent that they request information that is relevant to the notice and lack of cooperation claims.

ECF No. 60 at 16-17 (emphasis added).

Despite the July Order, Integon continues to argue that the entire claim file is protected by the work-product doctrine. ECF No. 69 at 10. The court has already rejected such a blanket assertion of work-product protection over the claim file, and the law also does not support Integon's assertion of work-product protection over the entire claim file. As previously noted in Gilliard v. Great Lakes Reinsurance U.K. PLC, 2013 U.S. Dist. LEXIS 56968 (D.S.C. Apr. 22, 2013),

> "The application of the work product doctrine is particularly difficult in the context of insurance claims." Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 536, 541- 42 (N.D. W. Va. 2000). "[I]nsurance companies have a duty to investigate, evaluate, and adjust claims made by their insureds. The creation of documents during this process is part of the ordinary course of business of insurance companies, and the fact that litigation is pending or may eventually ensue does not cloak such documents with work-product protection." HSS Enters., LLC v. Amco Ins. Co., [] 2008 WL 163669, at *4 (W.D. Wash. Jan. 14, 2008) (citation omitted). "Because an insurance company has a duty in the ordinary course of business to investigate and evaluate claims made by its insureds, the claims files containing such documents usually cannot be entitled to work product protection." Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos., 123 F.R.D. 198, 202 (M.D.N.C. 1988); see also St. Paul Reinsurance Co. v. Commercial Fin. Corp., 197 F.R.D. 620, 636 (N.D. Iowa 2000) ("[A]n insurer's investigation of whether coverage exists is required and the conduct of that much of its investigation is assuredly in the ordinary course of its business, not 'in anticipation of litigation.'").

Based on this reasoning, courts have routinely denied work-product protection to insurance claim files. See, e.g., Graham v. Nat'l Union Fire Ins. Co., 2017 U.S. Dist. LEXIS 4501, at *11 (D.S.C. Jan. 12, 2017) ("A claims file generally is not prepared in anticipation of litigation but in the ordinary course of business to determine if the insurer

needs to provide coverage."); Meighan v. TransGuard Ins. Co. of Am., Inc., 298 F.R.D. 436, 446 (N.D. Iowa 2014) ("Even if the parties reasonably anticipate litigation, the work product privilege does not apply to documents that are generated in the ordinary course of business."). Accordingly, the court again orders that Integon produce the relevant portions of the claim file.

The relevancy question is specific to each discovery request. Requests number 2 and 3 both relate to the actions Integon took in connection with the Accident. Request number 2 asks that Integon "[p]roduce a copy of all documents, electronic or otherwise, that represent any action or activity taken by or for Plaintiff resulting from the wreck that is the subject of this action taken on or after January 5, 2018 until and including August 31, 2018." ECF No. 61-2 at 2. Request number 3 asks that Integon "[p]roduce a copy of an activity log, regardless of the name used for it internally, for all actions taken on or after January 5, 2018 until and including August 31, 2018 by or for Plaintiff resulting from the wreck that is the subject of this action." ECF No. 61-2 at 2. Discovery requests number 12 and 13 both relate to the information Integon has obtained related to liability and damages for the Accident. Request number 12 asks that Integon "[p]roduce a copy of all materials in the possession of [] Integon related to the liability in this matter as well as the potential damages on August 7, 2018." ECF No. 61-2 at 8. Request number 13 asks that Integon "[p]roduce a copy of all materials in the possession of [] Integon related to the liability in this matter as well as the potential damages at 3:37 PM on August 30, 2018." ECF No. 61-2 at 8.

Integon asserts that "Price is in possession of all relevant information in [Integon]'s possession from January 5, 2018 through August 3, 2018" and any documents

generated after that time period are only relevant to bad faith and/or extra-contractual

liability claims that are not ripe.  ECF No. 69 at 10-11.  Price, on the other hand, argues

the documents responsive to these requests are all relevant to the issue of prejudice,

specifically "what Integon knew or could have known that would enable it to determine

liability and damages and more importantly what it did not know due to an alleged failure

of Gomez and Mejia to cooperate."  ECF No. 84 at 10.  Price cites to Alabama law for the

proposition that that the insurer bears the burden of not only proving failure to cooperate,

but also that the failure to cooperate was prejudicial to the defense of the case.  See Axis

Ins. Co. v. Terry, 2019 U.S. Dist. LEXIS 14662, at *34 (N.D. Ala. Jan. 30, 2019) ("Non-

cooperation is prejudicial if the failure to cooperate negate[s] the only evidence the

insurer could offer in defense, or deprives the insurer of the ability to conduct an

investigation and mount a defense."); Co. Colo. Cas. Ins. Co. v. Kirby Co, 2008 U.S.

Dist. LEXIS 3088, at *19 (M.D. Ala. Jan. 14, 2008) ("To void insurance coverage based

on noncooperation, it is insufficient to merely establish non-cooperation.  Non-

cooperation must be substantial and material, and [the insurer] must demonstrate

prejudice.").  The court agrees with Price.  The documents related to the actions Integon

took in response to the Accident (request numbers 2 and 3), as well the information

related to the Accident that Integon was or was not able to obtain in its investigation

(requests number 12 and 13) help show whether Integon was prejudiced by the alleged

lack of notice and cooperation.  Given the lenient relevancy standard, the court finds these

discovery requests relevant and orders Integon to produce documents responsive to

request numbers 2, 3, 12, and 13.[2]

---

[2] During the October Hearing, the court was specifically asked to review in camera
the redacted sections of the produced claims activity log, ECF No. 84 at Exhibit I, to

## 2. Discovery Request Number 5(c)

Request number 5(c) asks Integon to produce the "number of policies where the Plaintiff attempted to or did successfully rescind a policy for failure to list a resident of the insured's residence" for the calendar years 2016, 2017, and 2018.  ECF No. 61-1 at 2-3.  Integon objects to this request as irrelevant.  Price argues that this request is relevant to the extent Integon asserts the policy is void pursuant to Alabama Code § 27-14-7(a)(3), which provides that misrepresentations shall not prevent recovery under an insurance policy unless:

> The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Price explains that, under Alabama law, "an insurer relying on § 27-14-7(a)(3) has the burden of demonstrating that its underwriting guidelines in dealing with similar misrepresentations <u>are universally applied</u>."  <u>Baker</u>, 207 F. Supp. 3d at 1253 (citations omitted) (emphasis added).

The court has already addressed this argument in its July Order in the context of Price's request for Integon's underwriting process and guides.  As the court explained in denying that request, this production

> could only be relevant if Integon pursued the theory of misrepresentation discussed by Price.  If Integon decides to pursue that theory and fails to produce the necessary [] information, then Integon simply won't be able to prove its claim.  But there are clearly other theories of

determine whether it should order production of those redacted sections.  Upon review, the court finds the redacted portions relevant and not protected by the work-product doctrine, attorney client privilege, or any other privilege, except for notes categorized as a "Claims Attorney Note."  Accordingly, the court orders production of the redacted sections of Exhibit I with the exception of those notes.

misrepresentation that Integon can pursue to which the entirety of [this request is] not relevant.

ECF No. 60 at 10; see id. at 13.  Integon could, alternatively, pursue theories that prevent recovery under an insurance policy when the misrepresentation is fraudulent or when the misrepresentation is "[m]aterial either to the acceptance of the risk or to the hazard assumed by the insurer." § 27-14-7(a)(1)–(2).  Neither of these theories require a showing of universal application of the insurer's guidelines in dealing with similar misrepresentations.  As such, the court denies Price's request number 5(c) without prejudice, pending the deposition of Gomez.

### 3. Discovery Request Number 11

Discovery request number 11 seeks information related to James Hanks, an Integon employee with whom Gomez corresponded about the Accident.  Specifically, Price seeks the following: (1) a copy of Hanks' job description as of August 7, 2018; (2) whether Hanks is still employed by Integon; (3) where Hanks' office is currently located; and (4) Hanks' contact information if he is no longer employed by Integon.  ECF No. 61 at 24.  Price requests this information so that she can depose Hanks regarding "(a) the cooperation— or lack thereof—of Gomez and Mejia; (b) any prejudice—or lack thereof—to Integon as a result of the alleged failure to cooperate; and (c) notice—or lack thereof—provided to Integon."  ECF No 84 at 12.  Integon initially objected to this discovery request as irrelevant.  However, during a hearing held on October 19, 2020 (the "October Hearing"), Integon agreed to Price's request as limited to the four categories of information specified above.  Therefore, the court grants the motion to compel with respect to request number 11, as limited.

#### 4. Discovery Request Number 16

Request number 16 seeks production of "a copy of all training materials used to train the persons occupying the position that Jamie Ross held on January 5, 2018, including any 'script' he was to follow when a call came in." ECF No. 61-1 at 6. Jamie Ross is the Integon employee (and unfortunately not the character in Law & Order played by Carey Lowell) who spoke to Mejia and the investigating officer while they were still at the scene of the accident on January 5, 2018 to verify insurance for the car driven by Mejia. Integon contends that this notice was not sufficient because the phone call came into the "Customer Care" line rather than the "Report a Claim" line. ECF No. 61-2 at 10. As such, Price argues Ross's training materials relate to Integon's claim of lack of notice. Integon argues this request is irrelevant and overbroad. However, on August 21, 2020, after Integon responded to the motion to compel, Integon produced a redacted portion of its instructions to a person in Ross's position when a call was received from a police officer at the scene of an accident to confirm coverage. ECF No. 84 at 13. Price requested that the court review the redacted sections of the training material, ECF No. 84 at Exhibit J, in camera, and the court agreed to do so. Upon review, the court finds that the redacted sections are either not relevant or privileged, and thus denies the motion as to request number 16.

#### 5. Discovery Request Number 17(d)

Request number 17(d) seeks evidence that Integon relies upon to contend that Mejia was "living with" Gomez. ECF No. 61-1 at 6. During the October Hearing, the parties confirmed that this issue has been resolved by the parties. Therefore, the court denies the motion as moot with respect to request number 17(d).

### 6. Discovery Request Numbers 20

Discovery request number 20 asks for production of "all documents related to any claim paid under the instant policy, regardless of the date of the occurrence."  ECF No. 61-1 at 7.  Integon objects to this request as protected work product to the extent it seeks Integon's claim files.  However, the court has already rejected this blanket assertion of work-product protection for its claim file <u>supra</u>.  Integon further objects to this request as irrelevant and overbroad.  Integon points to the court's reasoning in its July Order with respect to the relevancy of Integon's underwriting guides.  There, the court explained that it "fail[ed] to see how this information [is] relevant to Price's affirmative defense of waiver and estoppel.  To prove those defenses, Price will simply need to show that Integon continued to accept Gomez's premiums after Integon learned of Gomez's alleged misrepresentation."   ECF No. 60 at 11 (citing <u>Henson v. Celtic Life Ins. Co.</u>, 621 So. 2d 1268, 1277 (Ala. 1993) ("[I]t is settled that acceptance of premiums by an insurer, after learning of a breach of a condition or ground for forfeiture, normally constitutes a waiver or estoppel.")).  In response, Price argues that "[w]hile acceptance of premiums after learning of a ground for forfeiture is one way to show waiver of the forfeiture, it is not the only way."  ECF No 84 at 14.  Waiver can also be established by showing that the insurer "treat[ed] the policy as valid, or as being still in force."  <u>Tedder v. Home Ins. Co.</u>, 103 So. 674, 677 (Ala. 1925).   The court agrees with Price that evidence of claims paid under the policy after Integon knew or should have known of the

breach is relevant to the question of waiver, and thus orders production responsive to request number 20.[3]

## IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** Gomez and Mejia's motions to set aside entry of default, **DENIES** Integon's motion for default judgment, and **GRANTS IN PART AND DENIES IN PART** Price's motion to compel.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 10, 2020**
**Charleston, South Carolina**

---

[3] For avoidance of doubt, the court clarifies that it stands by its July Order denying the motion to compel production of the entirety of Integon's underwriting process and underwriting guides as irrelevant.