IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| INTEGON NATIONAL INSURANCE COMPANY, </br></br> Plaintiff, </br></br> vs. </br></br> ALICIA MEJIA GOMEZ; BRIAN MONROY MEJIA; and MARGARET MITCHELL PRICE, *as personal representative of the estate of* ALICIA MARIA MITCHELL, </br></br> Defendants. | No. 2:19-cv-2958-DCN </br></br> **ORDER** |

The following matter is before the court on plaintiff Integon National Insurance Company's ("Integon") motion to stay, ECF No. 131, and motion for a protective order, ECF No. 133. For the reasons set forth below, the court denies the motion to stay and finds as moot the motion for a protective order.

## I. BACKGROUND

This case arises out of a fatal automobile accident. On January 5, 2018, defendant Brian Monroy Mejia ("Monroy") was driving a 2003 Ford Expedition in Charleston County, South Carolina when he was involved in an accident (the "Accident") that resulted in the death of pedestrian Alicia Maria Mitchell ("Mitchell"). Defendant Margaret Mitchell Price ("Price") is the personal representative of the estate of Mitchell. The Ford Expedition was owned by Monroy's mother, defendant Alicia Mejia Gomez ("Mejia"), and covered by an automobile insurance policy (the "Policy") issued by Integon.

1

On October 1, 2018, Price filed a wrongful death suit in this court against Monroy and Mejia, Price v. Mejia, No. 18-cv-02673-DCN (D.S.C. 2018) ("the Underlying Action"). On October 17, 2019, Integon filed the instant action in the Dorchester County Court of Common Pleas seeking a declaration that the Policy does not provide coverage for the Accident, that Integon has no duty to defend or indemnify in the Underlying Action, and that the Policy is void. ECF No. 1-1, Compl. Integon makes two main allegations to support its contention that the Policy is void. First, it alleges that Mejia made a material misrepresentation on the Policy application by not listing Monroy as a resident of her household, making the policy void ab initio. Second, Integon alleges Mejia and Monroy failed to notify Integon of the Accident and failed to cooperate with Integon's investigation of the Accident, as required under the Policy. Specifically, Integon alleges that the failure of Monroy and Mejia "to promptly and fully cooperate" with it "delayed, inhibited, adversely affected, and substantially prejudiced [its] ability to promptly investigate the subject loss, including, but not limited to, issues surrounding the facts and circumstances surrounding the accident; fault with respect to the parties involved; the existence of any potential witnesses to the accident; and environmental factors related to the accident." Compl. ¶ 31. Price removed the action to this court on October 17, 2019. ECF No. 1. On November 26, 2019, Price answered Integon's complaint, asserted various affirmative defenses, and filed a counterclaim seeking a declaration that Integon has a duty to defend and indemnify Monroy and Mejia in the Underlying Action. ECF No. 5.

On April 19, 2021, Integon filed a motion to stay the instant action until resolution of the Underlying Action. ECF No. 131. On May 3, 2021, Price responded,

ECF No. 136, as did Monroy and Mejia, ECF No. 137. On April 28, 2021, Integon filed a motion for a protective order to prevent further discovery pending the court's resolution of the motion to stay. ECF No. 133. On April 30, 2021, Price responded to the motion for a protective order. ECF No. 135. On May 7, 2021, Integon replied in support of both its motion to stay and motion for a protective order. ECF No. 138. On November 4, 2021, the court held a hearing on the motions. ECF No. 144. As such, both motions are now ripe for the court's review.

## II. STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254–55 (1936); see also United States v. Oliver, 878 F.3d 120, 124 (4th Cir. 2017) ("The Supreme Court has [] recognized federal courts' inherent authority to . . . stay an action pending the outcome of parallel proceedings in another court[.]"). A court may invoke this authority upon a party's request or on its own accord. Crown Cent. Petroleum Corp. v. Dep't of Energy, 102 F.R.D. 95, 98 (D. Md. 1984). Determining whether to issue a stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis, 299 U.S. at 255. The district court has discretion in issuing a stay, given that it is in the interest of "the expeditious and comprehensive disposition of the causes of action on the court's docket." United States v. Ga. Pac. Corp., 562 F.2d 294, 296 (4th Cir. 1977).

## III. DISCUSSION

Integon requests that the court stay the instant litigation until resolution of the Underlying Action and, in the meantime, issue a protective order that prohibits further discovery until resolution of its motion to stay. Because the court's resolution of the motion to stay moots the motion for a protective order, the court only addresses the motion to stay below.

Integon's motion to stay follows its receipt of an unfavorable ruling from this court on its motion to preclude discovery into its tort defenses in the Underlying Action. By way of background, on February 18, 2021, Integon moved the court for a protective order precluding deposition testimony regarding "Integon's handling of Price's claim" and "Integon's liability defenses in the [U]nderlying [Action]." ECF No. 124 at 6–7. On March 31, 2021, this court denied that motion and ordered Integon to provide discovery on its tort defenses in connection with its allegation that defendants failed to cooperate with Integon's investigation of the accident in question (the "March Order"). ECF No. 130 at 7. The court explained:

> In the instant action, Integon claims that the Policy is void because [Monroy] and Mejia failed to timely notify Integon of the Accident and likewise failed to cooperate with Integon during the investigation, as required under the Policy, and Integon was prejudiced as a result. Under Alabama law, which governs the instant coverage dispute, "[t]o void insurance coverage based on noncooperation, it is insufficient to merely establish non-cooperation. Non-cooperation must be substantial and material, and [the insurer] must demonstrate prejudice." Co. Colo. Cas. Ins. Co. v. Kirby Co, 2008 U.S. Dist. LEXIS 3088, at *19 (M.D. Ala. Jan. 14, 2008) (emphasis added). "Non-cooperation is prejudicial if the failure to cooperate negate[s] the only evidence the insurer could offer in defense, or deprives the insurer of the ability to conduct an investigation and mount a defense." Axis Ins. Co. v. Terry, 2019 U.S. Dist. LEXIS 14662, at *34 (N.D. Ala. Jan. 30, 2019) (emphasis added).

4

Id. at 4. The court found that Integon's liability defenses in the Underling Action were "directly relevant to the issue of prejudice"—a requirement to prove its non-cooperation claim. Id. at 6. The court observed that

> [d]efendants cannot determine whether the alleged failure to cooperate hindered Integon's ability to "mount a defense" or negated evidence Integon "could offer in defense" without knowing what defenses Integon has or believes it should have had in the Underlying Action. As such, defendants have a strong interest in Integon's liability defenses to defend against Integon's lack of cooperation claim.

Id. The court advised that

> Integon may not . . . claim that lack of cooperation prejudiced Integon in its defense in the Underlying Action and simultaneously object to any [discovery] regarding that defense. Integon continues to pursue its lack of cooperation theory, yet repeatedly attempts to dodge any discovery regarding the same. See ECF No. 113 at 21 (ordering Integon to produce documents relevant to whether Integon was prejudiced by the alleged lack of notice and cooperation); ECF No. 60 at 16–17 (granting motion to compel with respect to information relevant to Integon's notice and lack of cooperation claims). Integon cannot have it both ways. Integon must either pursue its lack of cooperation theory and submit to discovery regarding prejudice in the Underlying Action or abandon its lack of cooperation theory altogether.

Id. at 7.

In its instant motion, Integon explains that it "has accepted the Court's ruling on this discovery issue." ECF No. 131-1 at 5. However, in light of the March Order, Integon argues that considerations of fairness to the parties, the purpose of the Declaratory Judgment Act, and judicial efficiency weigh in favor of staying this declaratory judgment action until resolution of the Underlying Action. The crux of these arguments is that if the court does not grant a stay, the court's March Order "would expose [Integon's Underlying

5

Action] counsel's[1] trial strategy through materials and deposition testimony ordinarily protected by the work product and attorney-client doctrines with respect to a currently pending case." ECF No. 131-1 at 6. In other words, Integon argues that complying with the court's March Order before the Underlying Action is resolved would prejudice it in that action.[2] Upon consideration, the court finds that the circumstances favor denying the request for a stay.

Integon bears the burden of establishing prejudice to prove its non-cooperation claim in this action, and defendants have repeatedly sought discovery on the issue to challenge that claim. As defendants put it, they are only seeking the answers to two discrete questions: (1) "what evidence that Integon could have offered in defense [of the

---

[1] As Integon explains, it has engaged different counsel in this action and the Underlying Action.

[2] The court has already considered and rejected a similar argument regarding prejudice to Integon in the Underlying Action that it made in the context of its motion for a protective order. ECF No. 130 at 6–7 ("Integon's broad, unsubstantiated assertion that the deposition testimony [regarding its tort defenses in the Underlying Action] 'could prejudice Integon's defenses in the underlying tort suit' falls short of the high standard for issuance of a protective order." (quoting ECF No. 124 at 6)). Essentially, in that order, the court found that Integon had merely asserted in a conclusory manner that it would be prejudiced in the Underlying Action if the court permitted deposition testimony related to its tort defenses in the Underlying Action, and such a bare assertion of prejudice did not satisfy Integon's burden under the high standard for issuance of a protective order. The motion for the protective order is distinguishable from the instant motion. Here, Integon further explains its assertion of prejudice by arguing that discovery into its liability defenses will reveal its counsel's "theory of the case and his litigation strategy" in the Underlying Action, which the Supreme Court considers to fall squarely under work-product protection. ECF No. 131-1 at 5 (citing N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 154 (1975)). Moreover, as explained below, the court did not find in its March Order that Integon would suffer no prejudice if it was forced to reveal its attorney-client communications or counsel's work-product. Rather, the court assumed for purposes of that order that Integon could provide at least some information on its liability defenses in the Underlying Action without invading on its attorney-client privilege or its counsel's work product. In the instant motion, the issue is whether Integon can provide sufficient discovery on its liability defenses to prove its non-cooperation claim without so invading, and, if not, whether Integon would be prejudiced as a result.

Underlying Action] has Integon been deprived of due to [Monroy and Mejia's] alleged failure to cooperate?" and (2) "what defense that Integon could have offered in the [Underlying Action] has Integon been deprived of due to the alleged failure to cooperate?"  ECF No. 136 at 10–11.  In other words, Price is asking Integon: "what has Integon lost due to the alleged failure to cooperate?"  Id.  Integon maintains that it cannot answer these questions without impermissibly treading on its attorney-client privilege or exposing its Underlying Action counsel's work product.

Notably, the court has not ruled—at least to date[3]—that Integon waived its work product protection and attorney-client privilege for materials and communications related to the Underlying Action by bringing its non-cooperation claim in the instant action.  Rather, the court simply ruled that Integon could not use these protections as a carte blanche shield from any and all discovery related to its non-cooperation claim—including the entirety of Integon's claim file and any deposition testimony regarding its handling of Price's claims and liability defenses in the Underlying Action.  Indeed, in finding that the attorney-client privilege and work product doctrine do not provide blanket protection over its claim files and these deposition topics, the court explicitly reserved Integon's right to object on attorney-client privilege and work product grounds where those objections were specifically warranted.  See ECF No. 60 at 17 ("Integon is free to claim work product or

---

[3] Although the court has not had occasion to rule on the issue of waiver, the court will consider those protections waived to the extent Integon does not assert those protections in good faith and in accordance with the court's discovery orders going forward.  Specifically, the court is prepared to consider such protections waived to the extent Integon continues to make blanket assertions of the same without directing its objections toward specific requested materials or elicited testimony.  Likewise, the court will consider any other abuse of its attorney-client privilege or work-product protection, such as failure to provide a privilege log when appropriate, waiver.

7

attorney-client privilege over portions of the claim file where those protections are warranted, and if necessary, Price is free to challenge those designations."); ECF No. 130 at 6–7 ("To the extent any elicited information is properly covered by the attorney-client privilege, counsel for Integon may raise such an objection at the deposition, and counsel for defendants are free to challenge such designation."). While the court's March Order does not preclude Integon from properly raising objections regarding attorney-client privilege or work-product protection, Integon seems to argue that even if it invoked those privileges and protections, two issues remain. First, Integon cannot fully make its case regarding prejudice—and thus succeed on its non-cooperation claim—without revealing attorney-client communications or its counsel's work product. Second, Integon may not be able to provide any discovery regarding its liability defenses in the Underlying Action, and thus comply with the March Order, since each piece of that discovery is properly considered work product because it involves either its counsel's theory of the case in the Underlying Action or its litigation strategy.

With respect to the first argument, Integon's claimed inability to prove prejudice and non-cooperation until resolution of the Underlying Action does not warrant a stay. Discovery in the Underlying Action is complete, and the court is unconvinced that the prejudice to Integon from Monroy and Mejia's alleged non-cooperation—to the extent there is any—is unclear to Integon at this stage of the litigation.[4] In any event, Integon

---

[4] Integon's complaint only alleges that Monroy and Mejia failed to notify Integon of the Accident and failed to cooperate with Integon's investigation of the Accident, as required under the Policy. Integon has failed to explain, even in a hypothetical sense, how trial might reveal any prejudice to Integon resulting from that alleged non-cooperation that is indiscernible at present. Integon also maintains that it may be prejudiced if Monroy and Mejia do not cooperate during the trial. However, because it filed the instant action before the trial of the

brought the instant action with full awareness that the Underlying Action had not been—and very well may not be—fully litigated before discovery and resolution of the instant coverage dispute.[5] Therefore, to the extent Integon cannot, at least without prejudicing itself, prove its non-cooperation claim until resolution of the Underlying Action, that dilemma is of Integon's own making. Indeed, Integon initiated this declaratory judgment action while the Underlying Action was pending presumably because it believed that an early determination on the issue of its duty to defend and provide coverage would be beneficial to it. As a result, the parties have litigated this case for almost two years and have engaged in written discovery, conducted depositions, and argued several motions before the court, many of which the court ruled on. Now, when faced with discovery obligations based on the claims it <u>elected</u> to bring, Integon attempts to backpedal and claim that an early determination on the coverage issue is a waste of judicial resources, prejudicial, and not in keeping with the purpose of the Declaration Judgment Act. The

---

Underlying Action, Integon did not—and could not—allege that Monroy and Mejia failed to cooperate at trial in its complaint. The court will not stay this action based on the mere possibility that Monroy and Mejia may not cooperate in the trial—particularly when the court has no reason, other than Integon's speculation, to believe that Monroy and Mejia will fail to cooperate at trial.

[5] During the hearing, Integon claimed that the only reason that the Underlying Action did not proceed to trial before this action advanced to its present stage is the COVID-19 pandemic. Nevertheless, at the time Integon filed the instant declaratory judgment action in October 2019, the Underlying Action was scheduled for trial during the term of court beginning February 1, 2020 at the earliest. As is often the case, that term could have been postponed for a host of reasons, even in the absence of the pandemic. Indeed, for reasons unrelated to the pandemic, in November 2019 the trial of the Underlying Action was pushed until the term of court beginning April 1, 2020. By filing this action before the resolution of the Underlying Action, Integon assumed the risk that this action would be litigated before the trial of the Underlying Action.

court is unpersuaded, and even if Integon's arguments were compelling, Integon has been hoisted by its own petard.

With respect to Integon's second argument, the court in unpersuaded that Integon cannot provide any information regarding its prejudice in the Underlying Action without revealing privileged or protected information. Integon has not cited a single instance where defendants have sought its communications with counsel in the Underlying Action. Likewise, Integon has not cited any specific materials that defendants have requested or questions that they or their counsel have posed soliciting information covered by the work product doctrine. Price avers that she "has not sought to compel Integon to disclose the contents of discussions with counsel" and "is not asking how Integon will use the evidence that does exist at the tort trial." ECF No. 136 at 10. She instead is only asking what evidence Integon does not have that it believes it would have but for Monroy and Mejia's lack of cooperation. The Federal Rules of Civil Procedure clearly contemplate a party pursing discovery of an opposing party's claims and defenses in a case, so in the Underlying Action, Price was entitled to discovery concerning Monroy and Mejia's liability defenses. See Fed R. Civ. P. 26(b)(1). The work product doctrine does not protect the factual basis of Integon's defenses, and, in a similar vein, it does not prevent a party from asking about the existence or nonexistence of evidence. In the court's view, Integon should be able to state—without exposing privileged or work product protected information—what defenses it should have had but will no longer pursue because of Mejia and Monroy's non-cooperation. It should also be able to note what evidence it believes it could have had but is no longer able to obtain in the Underlying Action without invading on its strategy in the Underlying Action. In other words, to the extent

that those defenses and evidence do not exist or are no longer available, they cannot be part of Integon's strategy in the Underlying Action as a matter of common sense.

In any event, the court is ultimately not requiring Integon to produce any privileged or protected materials or to provide testimony on those matters. As the court instructed in its March Order, Integon may either "submit to discovery regarding prejudice in the Underlying Action or abandon its lack of cooperation theory altogether." ECF No. 130 at 7. To the extent Integon maintains that certain or all information regarding its Underlying Action defenses is protected, it can elect to object and withhold that information. However, in so doing, Integon must forgo use of the same to prove its non-cooperation claim. Because Integon bears the burden of establishing prejudice to prove its non-cooperation claim in this action, its decision to withhold discovery on its liability defenses in the Underlying Action only hurts itself. And, as discussed previously, that harm is of Integon's own making and thus does not warrant staying the instant action. For similar reasons, Integon's argument that a stay is needed to avoid future discovery objections is unavailing. Integon effectively argues that if the court does not grant a stay, it will be forced to continue to raise discovery objections that will require the court's involvement. However, the court doubts that defendants will take issue with Integon's failure to provide the court with any evidence of prejudice, as such a failure only supports defendants' position that Integon in fact suffered no prejudice in the Underlying Action. More likely, defendants would file a motion for summary judgment on the non-cooperation claim. In any event, the fact that additional discovery disputes may arise does not warrant a stay. See, e.g., Amitie One Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co., 2010 U.S. Dist. LEXIS 26867, at *1 n.3 (M.D. Pa. Mar. 22, 2010)

11

(rejecting an insurer's request to stay a bad faith claim to avoid work product disputes, because the court was "not persuaded that the mere existence of such discovery disputes warrants a stay"). Therefore, upon weighing the competing interests and in the interest of maintaining an even balance, the court declines to exercise its discretion to issue a stay. To the extent Integon cannot succeed on its non-cooperation claim because it brought this action before resolution of the Underlying Action or because it asserts work-product or attorney-client privilege over all materials to prove that claim, Integon is the author of its own demise.

Because the court denies the motion to stay, the court finds as moot the motion for a protective order until resolution of the motion to stay.

### IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to stay and **FINDS AS MOOT** the motion for a protective order.

**AND IT IS SO ORDERED.**

_____
David C. Norton
United States District Judge

November 22, 2021
Charleston, South Carolina