**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| INTEGON NATIONAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:19-cv-2958-DCN |
| vs. | ) ) | **ORDER** |
| ALICIA MEJIA GOMEZ; BRIAN MONROY MEJIA; and MARGARET MITCHELL PRICE, *as personal representative of the estate of* ALICIA MARIA MITCHELL, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

The following matter is before the court on the motions for summary judgment filed by defendant Margaret Mitchell Price ("Price"), ECF No. 149; defendants Alicia Mejia Gomez ("Gomez") and Brian Monroy Mejia ("Mejia"), ECF Nos. 171 and 184; and plaintiff Integon National Insurance Company ("Integon"), ECF No. 172. For the reasons set forth below, the court denies all motions for summary judgment.

## I.  BACKGROUND

On January 5, 2018, Mejia was driving a 2003 Ford Expedition in Charleston County, South Carolina when he was involved in an accident (the "Accident") that resulted in the death of pedestrian Alicia Maria Mitchell ("Mitchell"). Price is the personal representative of the estate of Mitchell. The Ford Expedition was owned by Mejia's mother, Gomez, and covered by an automobile insurance policy (the "Policy") issued by Integon.

On October 1, 2018, Price filed a wrongful death suit in this court against Gomez and Mejia, Price v. Mejia, No. 18-cv-02673-DCN (D.S.C. 2018) (the "Underlying

1

Action").  On October 17, 2019, Integon filed the instant action in the Dorchester County Court of Common Pleas seeking a declaration that the Policy does not provide coverage for the Accident, that Integon has no duty to defend or indemnify in the Underlying Action, and that the Policy is void.  ECF No. 1-1, Compl.  Integon makes two main allegations to support its contention that the Policy is void.  First, it alleges that Gomez made a material misrepresentation on the Policy application by not listing Mejia as a resident of her household and a regular operator of her vehicle, making the policy void ab initio.  Second, Integon alleges that Gomez and Mejia failed to promptly inform Integon of the Accident.[1]  Price removed the action to this court on October 17, 2019.  ECF No. 1.  On November 26, 2019, Price answered Integon's complaint, asserted various affirmative defenses, and filed a counterclaim seeking a declaration that Integon has a duty to defend and indemnify Gomez and Mejia in the Underlying Action.  ECF No. 5. Gomez and Mejia thereafter filed similar answers and counterclaims.  See ECF Nos. 62, 63, and 113.

On February 22, 2022, Price filed a motion for summary judgment.  ECF No. 149. On April 1, 2022, Integon responded, ECF No. 165, and on April 11, 2022, Price replied, ECF No. 168.  On April 28, 2022, Gomez and Mejia filed a motion for summary judgment, essentially joining in Price's motion.  ECF No. 171.  On May 10, 2022, Integon responded.  ECF No. 179.  Gomez and Mejia did not file a reply, and the time to do so has now expired.  On April 29, 2022, Integon filed a motion for summary judgment.  ECF No. 172.  On May 23, 2022, Price responded, ECF No. 182, and on June

---

[1] In its complaint, Integon also initially alleged that Gomez and Mejia failed to cooperate with Integon's investigation of the Accident, as required under the Policy. Integon subsequently moved to voluntarily dismiss that claim, and the court dismissed the same with prejudice on June 13, 2022.  ECF No. 190.

3, 2022, Gomez and Mejia also responded, ECF No. 185.  Integon did not file a reply, and the time to do so has now expired.  Finally, on June 2, 2022, Gomez and Mejia filed an additional motion for summary judgment with respect to their counterclaims.  ECF No. 184.  On June 6, 2022, Integon responded in opposition.  ECF No. 186.  Gomez and Mejia did not file a reply, and the time to do so has now expired.  The court held a hearing on the motions on June 7, 2022.  ECF. No. 187.  As such, the motions for summary judgment are ripe for the court's review.

## II.  STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

3

## III.   DISCUSSION

All parties seek summary judgment in their favor on Integon's claims set forth in its complaint, including its requests for declarations (1) that the Policy is void <u>ab initio</u> due to alleged material misrepresentations made by Gomez and Mejia; (2) that the Policy does not provide coverage for the Accident because Gomez and Mejia failed to promptly notify Integon of the Accident; and (3) that, as a result, Integon has no duty to defend and indemnify Gomez and Mejia in the Underlying Action.  Integon also seeks summary judgment in its favor on Price, Gomez, and Mejia's (collectively, "defendants") counterclaims, including defendants' requests for declarations that Integon's claims are barred by the doctrines of waiver and estoppel and that Integon has a duty to defend and indemnify Gomez and Mejia.  Price, for her part, clarifies that she is only seeking summary judgment on the claims against her and is not seeking summary judgment on her counterclaims.  Gomez and Mejia, however, do seek summary judgment in their favor on their counterclaims.

Because all parties' motions for summary judgment turn on whether the Policy is void <u>ab initio</u> due to material misrepresentations and whether Integon had sufficient notice of the Accident for the Policy to provide coverage, the court discusses the parties' arguments with respect to each of Integon's claims in turn below.[2]  The court then addresses the parties' arguments with respect to defendants' standing to bring their counterclaims.

---

[2] As previously noted, the court dismissed Integon's lack of cooperation claim with prejudice, and, accordingly, the court does not address defendants' arguments for summary judgment in their favor on that claim.

**A.  Misrepresentation Claim**

All parties request that the court grant summary judgment in their favor on

Integon's misrepresentation claim.  The Policy provides,

> This Policy was issued in reliance upon the information provided on your written or verbal insurance Application.  <u>We reserve the right, at our sole discretion, to void from inception or rescind this Policy</u> if you or a family member:
>
>> 1. <u>Made any false statements or representations to us with respect to any material fact or circumstance</u>; or
>> 2. Concealed, omitted or misrepresented any material fact or circumstance or engaged in any fraudulent conduct;
>
> in the Application for this insurance or when renewing this Policy, requesting reinstatement of this Policy or applying for any coverage under this Policy.
>
> A fact or circumstance will be deemed material if we would not have:
>
>> 1. Written this Policy;
>> 2. Agreed to insure the risk assumed; or
>> 3. Assumed the risk at the premium charged.
>
> This includes, but is not limited to, failing to disclose in the verbal or written Application <u>all persons residing in your household or regular operators of a covered auto</u>.

ECF No. 1-1 at 57 (emphasis added).

In requesting summary judgment in its favor on this claim, Integon argues that

there is no genuine dispute that the Policy is void <u>ab initio</u> because Gomez made material

misrepresentations on her Policy application by failing to disclose Mejia as a resident of

her household or regular operator of her insured vehicle.  Defendants, conversely, argue

that they are entitled to summary judgment in their favor on this claim because Integon

waived its misrepresentation claim and is estopped from relying on relevant provisions in

5

the Policy to deny coverage.[3]  According to defendants, Integon waived its right to bring this claim because after it had knowledge of the alleged misrepresentations, it continued to accept and retain insurance premiums on the Policy, renewed the Policy several times, and paid an unrelated claim.

### 1.  Existence of and Responsibility For Any Misrepresentation

At the outset, the court addresses the issue of whether Gomez made any material misrepresentations in her Policy application or otherwise.  In other words, the parties dispute whether Mejia lived in Gomez's household[4] or was a regular operator[5] of her vehicles when the application was completed or any time thereafter.  Integon moves for summary judgment on this issue, but defendants do not.  Nevertheless, defendants argue that summary judgment in Integon's favor would be inappropriate because (1) Gomez did not materially misrepresent any facts to Integon; and (2) any misrepresentations in the application are the sole fault of the insurance agent, Alfonso Moreno ("Moreno").[6]

---

[3] In their briefings, defendants do not dispute that any misrepresentations regarding whether Mejia lived in Gomez's household or was a regular operator of her vehicles would be "material" under the Policy and grounds for Integon to void or rescind the Policy.

[4] The application required Gomez to list all persons "living in [her] household who are at least 14 years of age" and stated that she had a "continuing duty during the life of this policy to notify the Company any time a person at least 14 years of age becomes a household member."  Compl. at 16.  The Application further provided as follows: "I understand that I have a continuing duty to notify the Company within 30 days of any changes of . . . residents of my household of eligible driving age or permit age."  Id. at 18.

[5] The application defined a "regular operator" as "anyone who has used the vehicle to be insured under this policy at least once a week or at least 30 times over the last 12 months."  ECF No. 149-1 at 2.  The Policy defines "regular operator" as "someone who uses a covered auto at least once a week or at least thirty (30) times over the last twelve (12) months prior to an accident or loss."  ECF No. 149-2 at 7 (emphasis omitted).

[6] The parties dispute whether Moreno was Integon's agent or an independent agent.

As defendants concede, Integon has presented evidence that Mejia was a resident of Gomez's household and regular operator of her vehicles, and this evidence precludes summary judgment in defendants' favor on the issue of the existence of material misrepresentations. However, as defendants also point out, there is sufficient evidence that Mejia was not a regular operator of Gomez's vehicles and did not live with Gomez during the relevant period to preclude summary judgment in Integon's favor. See generally ECF No. 182 at 11–21. This evidence includes the deposition testimony of Gomez, Mejia, and Mejia's father, in which they discuss Mejia's transience from October 2016 until after the Accident in January 2018, including his stays in Fultondale, Alabama; Macon, Savannah, and Atlanta, Georgia; Summerville, South Carolina; and Tallahassee, Florida. Likewise, Gomez and Mejia both testified that Mejia only rarely drove Mejia's vehicles and did not use her vehicles as often as once a week or thirty times over a twelve-month period (the usage required to be considered a regular operator under the Policy).[7] Viewing the evidence in the light most favorable to defendants, the non-moving party on this issue, there is sufficient evidence for a jury to find in defendants' favor on the issue of whether material misrepresentations were made to Integon.

Moreover, even if any facts were misrepresented to Integon, other genuine issues of material fact preclude summary judgment as to the misrepresentation claim and related counterclaims. To begin, the court finds that a genuine issue of material fact exists as to

---

[7] Although Mejia stated that he took Gomez's vehicle out of state from December 20, 2017 through the time of the accident on January 5, 2018, it is unclear how many days of that trip Mejia "used" the vehicle. Drawing all reasonable inferences in defendants' favor, as it must, the court cannot find as a matter of law that Mejia used the vehicle at least once a week or thirty times over a twelve-month period, even taking into account this December trip.

7

whether Gomez is responsible for any alleged misrepresentations.  It is undisputed that

Gomez is unable to read or write in English.  The Policy's application for insurance is in

English, and, in order to complete the application, it is undisputed that an insurance

agent—Moreno—asked Gomez questions in Spanish, Gomez answered those questions

in Spanish, and Moreno input the information into her application in English.  Gomez has

consistently maintained, including in sworn testimony, that when she applied for

insurance, she was not asked who lived in her home and was only asked who was going

to drive the vehicles—not who would be a "regular operator" of her vehicles or use her

vehicles at least once a week or thirty times during a twelve-month period.  See ECF No.

182-13 at 85:9–85:23; 114:1–3.

As Integon points out, Gomez's testimony conflicts with that of Moreno.  Moreno

provided a written statement on April 24, 2020, indicating that he asked who was going

to drive Gomez's cars regularly:

> [W]hen [Gomez] came into my office for the first time to apply for her
> auto policy I asked her to give me the names of the people that were going
> to drive her vehicle, and then I told her that everybody that drove her cars
> regularly needed to be listed as driver [sic] otherwise it could jeopardize
> her coverage. And then I went over the application with her to verify the
> information and she said everything look [sic] fine.

ECF No. 173-5.  Moreno reiterated that position during his deposition seven months later,

on November 9, 2020, and he also stated that he always asks about the persons living in

the household (although he did not testify that he specifically recalled asking Gomez

that question).  See ECF No. 173-6, Moreno Dep. at 128:5–19; 152:6–13.

Gomez and Moreno's conflicting testimony creates a factual dispute regarding

whether Moreno fully and accurately conveyed to Gomez the contents of the Policy and

application, including the questions therein.[8]  Integon dismisses the conflicting evidence regarding whether Gomez was asked the proper questions by Moreno, arguing that Gomez must be held accountable for any misrepresentations—even if Moreno is entirely at fault for the same.  Integon contends that a "language barrier does not absolve [Gomez] of her material misrepresentations" nor does Moreno's role in completing the application. ECF No. 173 at 25.  In support of its argument, Integon cites Alfa Life Insurance Corp. v. Reese, 185 So. 3d 1091 (Ala. 2015)[9] which sets forth the general "duty to read" rule.  In Alfa Life, the Supreme Court of Alabama held that a life insurance applicant could not rely on her agent's representations as to the contents of her policy because of "the well settled 'duty-to-read' rule, which states that a plaintiff has a 'general duty . . . to read the documents received in connection with a particular transaction, along with a duty to inquire and investigate.'"  Id. at 1103 (internal citations omitted).  However, the court in Alfa Life also noted that "the duty-to-read rule may be avoided when there have been misrepresentations regarding the contents of a document and there are special circumstances or a special relationship between the parties or the plaintiff suffers from a disability rendering him or her unable to discern the contents of the document."  Id. at 1104.  Again, it is undisputed that Gomez cannot read or write in English and therefore could not complete the application unassisted.  Therefore, the duty-to-read rule may be avoided in this case if Moreno misrepresented the contents of the Policy and application.

---

[8] Notably, Integon fails to cite any testimony where Moreno contends that he explained to Gomez that a person who uses the vehicle at least once a week or thirty times during a twelve-month period should be listed as person that "drove her cars regularly."

[9] The parties agree that Alabama law applies, and the court previously conducted a choice-of-law analysis confirming the same.  See ECF No. 33 at 6.

This exception to the duty-to-read rule is illustrated in <u>National Life & Accident</u> <u>Insurance Co. v. Allen</u>, 234 So. 2d 567, 569 (Ala. 1970). There, the insurer appealed a judgment in favor of the insured, contending, <u>inter alia</u>, that the insured misrepresented his health on the application. The insured was blind, and "[i]t [was] obvious from [the insured's] signature on [the application], that he did not fill out any part of the application except to sign his name." <u>Id.</u> at 570. The Alabama Supreme Court upheld the lower court's judgment granting regular death benefits, "convinced that a jury question was presented and the jury found against" the insurance company as to the material misrepresentation. <u>Id.</u> The court stated,

> We think it is clear that our cases hold that <u>an insurance company cannot</u> <u>defend a suit on its policy on the grounds that there are misrepresentations</u> <u>in the policy application, if the misrepresentations are the fault of its own</u> <u>agent without participation by the insured or the beneficiary</u>, even where the application is a part of the policy. . . . <u>Where an insurance agent does</u> <u>not ask questions of the insured but writes answers as though he had done</u> <u>so, the insurer cannot deny coverage on this basis</u>. When without any fault on the part of the insured through neglect of the insurer's agent, misstatements are made in the application, the insurer cannot defend on this ground. Further, misrepresentation resulting solely from an act or oversight of the soliciting agent taking the application, without the knowledge of the insured, are not available to the insurer although the company issuing the insurance acts on the application as presented and without knowledge of the agent's misfeasance.

<u>Id.</u> (internal quotation marks and citations omitted) (emphasis added).

Numerous courts applying Alabama law have followed the principle set forth in <u>Allen</u> and have held that where there is evidence that the misrepresentation is the fault of the agent, the insurer is not entitled to summary judgment due to the misrepresentation. For example, in <u>Hillery v. Allstate Indemnity Co.</u>, the Southern District of Alabama held that Allstate was not entitled to summary judgment as to its argument that the plaintiffs' "breach of contract claim fails as a matter of law because the Policy was invalidated by

Hillery's material misrepresentations during the application process." 705 F. Supp. 2d 1343, 1357 (S.D. Ala. 2010). It was undisputed that the "signed application form was inaccurate in several respects," but "[w]hat is disputed . . . is whether those inaccuracies arose because of misstatements by Hillery (as Allstate maintains) or because of transcription errors by the insurance agent who recorded Hillery's oral responses (as plaintiffs maintain)." Id. The court noted that there was "substantial record evidence . . . supporting a reasonable inference that all of [Hillery's] responses to the agent were truthful, that the agent distorted those responses in transcribing them, and that Hillery was unaware of the agent's errors because he never read the completed application before signing it." Id. at 1357–58. In denying Allstate's request for summary judgment as to its contention of material misrepresentations during the application process, the court stated,

> If the finder of fact were to believe Hillery's version of events, then Allstate would be unable to void the Policy on the ground of misrepresentation during the application process. Under Alabama law, "[i]t is well settled that an insurance company cannot defend its refusal to pay benefits on grounds that the insured made a misrepresentation in the application if the misrepresentation was the fault of the agent and that fault was without participation by the insured." Miller v. Dobbs Mobile Bay, Inc., 661 So.2d 203, 206 (Ala. 1995); see also Nat'l Life & Acc. Ins. Co. v. Allen, 285 Ala. 551, 234 So. 2d 567, 570 (Ala. 1970) ("When without any fault on the part of the insured through neglect of the insurer's agent, misstatements are made in the application, the insurer cannot defend on this ground.") (citations omitted). Where, as here, there are "great factual discrepancies" as to "whether [the insured] read the form [the agent] filled out, whether [the insured] knew how [the agent] had filled out the form, and whether [the agent] himself might have been responsible for the wrong information," there is plainly a jury question as to the insurer's ability to defend against the claim on the basis of misrepresentation. Union Bankers Ins. Co. v. McMinn, 541 So.2d 494, 497 (Ala. 1989).

Id. at 1358 (emphasis added). Likewise, here, there are factual discrepancies as to whether Moreno is responsible for any wrong information in the application, which

makes Integon's ability to void the Policy on the basis of misrepresentation a question for the jury.

Integon argues that the <u>Allen</u> rule does not apply when the insurance agent is an independent agent, rather than an agent of the insurer. The court declines to consider that argument because the court cannot determine whether Moreno is an independent agent or an agent for Integon. The parties dispute the matter, but they do not provide sufficient law or argument for the court to conduct any meaningful analysis. As such, this is a factual dispute that the court cannot resolve as a matter of law. Indeed, "[a]lthough an independent agent or broker is normally an agent for the insured, for some purposes he may at the same time be an agent for the insurer as well." <u>Wash. Nat'l Ins. Co. v. Strickland</u>, 491 So. 2d 872, 875 (Ala. 1985). Notably, Moreno entered into an "Agency Agreement" with Integon, and the parties do not address the purpose and substance of that agreement. <u>See</u> ECF No. 149-11. Accordingly, as it stands, there is a genuine dispute of material fact as to whether an agency relationship existed between Moreno and Integon based on this contract or otherwise.

Integon further argues that, under Alabama law, Gomez was required to request that the Policy and application be read to her or to inquire as to their contents before signing—regardless of if she could read those documents herself. ECF No. 173 at 26 (citing <u>Johnnie's Homes, Inc. v. Holt</u>, 790 So. 2d 956, 960 (Ala. 2001) ("[A] person who signs an instrument without reading it, when he can read, can[]not, in the absence of fraud, deceit or misrepresentation, avoid the effect of his signature, because [he is] not informed of its contents; <u>and the same rule [applies] to one who can[]not read, if he neglects to have it read, or to enquire as to its contents</u>.") (emphasis in original)). Here,

however, the court cannot say as a matter of law that Gomez neglected to inquire as to the contents of the Policy and application.  Moreno undertook to complete the application for Gomez by orally asking her questions he deemed pertinent.  Moreno further provided a written statement that he "went over the application with [Gomez]."  ECF No. 173-5. There is sufficient evidence for a jury to decide that Gomez reasonably relied on Moreno's overview of the Policy and application contents in signing the Policy application.  There is likewise sufficient evidence for a reasonable jury to credit Gomez's testimony and find Moreno's overview lacking.  Accordingly, the court is not convinced that the rule set forth in <u>Allen</u> is inapplicable to this case as a matter of law.  And, in light of <u>Allen</u> and its progeny, the factual issues of whether any misrepresentations are the fault of Gomez or Moreno render summary judgment inappropriate.

   To summarize the issues relating to the existence of a material misrepresentation, there is conflicting evidence as to whether a misrepresentation was made (i.e., where Mejia lived and whether he was a regular operator of Gomez's vehicles).  There is also conflicting evidence as to whether Moreno posed the proper questions to Gomez in completing her application for her.  In light of Alabama case law declining to hold an insured responsible for misrepresentations by an insurance agent when the insured is at the mercy of the agent, a reasonable jury could find that Integon cannot rescind the Policy based on misrepresentations, if any, in the application.  See <u>Allen</u>, 230 So. 2d at 570. Accordingly, summary judgment in Integon's favor on the issue of the existence of and responsibility for any material misrepresentation is inappropriate.

## 2.   Ability to Waive Misrepresentation Provisions

The parties next dispute the issue of waiver.  A finding of waiver would preclude summary judgment in Integon's favor on the misrepresentation claim and warrant summary judgment in defendants' favor—whether or not any misrepresentation was made.  Under Alabama law, "it is settled that acceptance of premiums by an insurer, after learning of a breach of a condition or ground for forfeiture, normally constitutes a waiver or estoppel."  Henson v. Celtic Life Ins. Co., 621 So. 2d 1268, 1277 (Ala. 1993).  An insurance company "cannot treat the policy as void for the purpose of defense to an action to recover for a loss thereafter occurring, and at the same time treat it as [valid] for the purpose of earning and collecting further premiums."  S. States Life Ins. Co. v. Dunckley, 148 So. 320, 323 (Ala. 1933).  Equally well established, however, is the doctrine that "coverage under an insurance policy cannot be created or enlarged by waiver or estoppel."  Home Indem. Co. v. Reed Equip. Co., 381 So. 2d 45, 51 (Ala. 1980).  In other words, the doctrine of waiver "is not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom."  Reed Equip. Co., 381 So. 2d at 50–51 (Ala. 1980).  Alabama courts have therefore concluded that when a "coverage provision or an exclusion is unambiguous, it is not subject to waiver or estoppel."  Woodall v. Alfa Mut. Ins. Co., 658 So. 2d 369, 372 (Ala. 1995).  Thus, whether Integon's continued acceptance of insurance premiums, renewals of the Policy, and payment of a separate claim constituted waiver of the alleged misrepresentations turns on whether a coverage or forfeiture provision is implicated.  The parties dispute this issue.  The court first addresses this matter, and finding that the

provisions relate to forfeiture and therefore may be waived, the court then addresses whether Integon's actions amounted to waiver in this case.

Defendants argue that, in claiming that Gomez made material misrepresentations that render the Policy void <u>ab initio</u>, Integon relies on a forfeiture provision, not a coverage provision. As defendants explain it, the Accident claim falls squarely within the coverage offered by the Policy. Defendants assert that Part A of the Policy provides liability coverage and states, <u>inter alia</u>,

> INSURING AGREEMENT Subject to the limit of liability shown on the Declarations Page, if you Subject to the limit of liability shown on the Declarations Page, if you pay us the premium for Liability Coverage, <u>we will pay compensatory damages for which an insured is legally liable due to bodily injury or property damage caused by an accident that arises out of the ownership, maintenance or use of an auto covered under this PART A</u>. Damages include prejudgment interest awarded against the insured subject to our limit of liability for this PART A.

Compl. at 30 (emphasis added).

Part A provides an additional definition with respect to the term "insured":

"Insured", as used in this PART A, means:

1. You and any family member for:
      a. Operation or use of any auto with permission from its owner; or
      b. The ownership, maintenance or use of a covered auto.

2. Any person using a covered auto with your permission . . . .

<u>Id.</u> According to defendants, Gomez is an insured under Part A, as she is a named insured and listed on the declarations page. <u>Id.</u> at 27–28. Mejia is also an insured under Part A, as he was driving the Ford Expedition with Gomez's permission. <u>See</u> ECF No. 149-5, Mejia Dep. at 48:6 5–50:9; ECF No. 149-6, Gomez Dep. at 29:19–30:2, 91:6–92:20. Defendants explain that the Ford Expedition involved in the accident meets the definition of a "covered auto," as it is listed on the declarations page. Compl. at 27.

15

They further explain that the claims against Gomez and Mejia in the Underlying Action arise out of the ownership, maintenance, or use of the Ford Expedition.  Defendants maintain that, in contending that the Policy provides coverage for the Accident, they are not seeking coverage for a risk expressly excluded from the Policy; they instead are seeking coverage for a risk expressly included in the Policy.  Accordingly, defendants argue that the relevant provisions are forfeiture provisions that can be waived.

To support their point, defendants also point to the subsection of the Policy entitled "Misrepresentation and Fraud," which states,

> This Policy was issued in reliance upon the information provided on your written or verbal insurance Application. <u>We reserve the right, at our sole discretion, to void from inception or rescind this Policy</u> if you or a family member:
>
> > 1. <u>Made any false statements or representations to us with respect to any material fact or circumstance</u>; or
> > 2. Concealed, omitted or misrepresented any material fact or circumstance or engaged in any fraudulent conduct;
>
> in the Application for this insurance or when renewing this Policy, requesting reinstatement of this Policy or applying for any coverage under this Policy.
>
> A fact or circumstance will be deemed material if we would not have:
>
> > 1. Written this Policy;
> > 2. Agreed to insure the risk assumed; or
> > 3. Assumed the risk at the premium charged. This includes, but is not limited to, failing to disclose in the verbal or written Application all persons residing in your household or regular operators of a covered auto . . . .

Compl. at 57 (emphasis added).  Defendants argue that this section of the Policy relating to misrepresentations does not exclude anything from coverage; it provides the insurer with discretion "to void from inception or rescind th[e] Policy" in certain circumstances. <u>Id.</u>  As such, by its very terms, it must be a forfeiture provisions.

16

Integon, on the other hand, argues that its misrepresentation claim is grounded in a coverage provision.  It argues that Price seeks to expand or create coverage by including Mejia as an insured driver under the Policy due to his permission to drive his mother's car even when the Policy requires the insured to report regular operators and residents of the insured's household.  According to Integon, these reporting requirements must be met in order for coverage to be extended.  In other words, the provision of coverage by Integon is predicated on the insured following the Policy and Policy application's instructions.  It follows, Integon argues, that the Policy provisions requiring disclosure of Mejia on the Policy application are coverage provisions, which are not subject to waiver.

The court finds that the provisions relating to misrepresentations are forfeiture provisions and are thus subject to waiver as a matter of law.  The coverage portion of the policy, Part A, on its face does not exclude coverage for drivers who are not listed as residents or regular operators.  Rather, it provides coverage to "an insured" for "an accident that arises out of the ownership, maintenance or use" of a covered auto.  Compl. at 30.  There is no genuine dispute that the Ford Expedition is a covered auto under the Policy, as it is listed as such in the Policy.  Likewise, there is no genuine dispute that Mejia is an insured because Integon does not dispute that Mejia was using the Ford Expedition with Gomez's permission.  Instead, the provision on which Integon relies to deny coverage, entitled "Misrepresentation and Fraud," provides that Integon may "void from inception or rescind th[e] Policy" in the event of a material misrepresentation.  Id. at 57.  Therefore, based on the clear language of the Policy, misrepresentations are grounds for forfeiture of coverage otherwise contemplated by the Policy.  Integon essentially

argues that because it can rescind or void the Policy—and thereby deny a claim coverage—in the event of a misrepresentation, the provisions concerning misrepresentations must be coverage provisions.  If the court accepted this argument, every requirement in an insurance provision would be considered a coverage provision, and the distinction between coverage and forfeiture provisions would be rendered meaningless.  Thus, the court rejects that argument.  The court finds that Integon's misrepresentation claim relate to forfeiture provisions and therefore may be waived.[10]

### 3.  Evidence of Waiver

Having established that the misrepresentation claim may be waived under Alabama law, the court addresses the parties' next dispute—whether Integon did in fact waive any alleged forfeiture based on misrepresentation.  Waiver is the intentional relinquishment of a right.  It is "ascertained from the external acts manifesting the waiver" and may be found when one's course of conduct either indicates a waiver or is inconsistent with any other intention.  Givens v. Gen. Motors Acceptance Corp., 324 So. 2d 277, 279 (Ala. Civ. App. 1975).  Facts vary from case to case, and ordinarily the question of a waiver is a factual issue, but if the evidence, or any reasonable inference therefrom, fails to furnish a scintilla of evidence in support of a waiver, the factfinder is precluded from factually deciding that a waiver exists.  Auto-Plaza, Inc. v. Central Bank of Ala., N.A., 394 So. 2d 6, 9 (Ala. 1980).  Nevertheless, and as previously noted, "[i]t is well settled under Alabama law that when an insurer has knowledge of a fact or situation

---

[10] Alternatively, defendants argue that even if the relevant provisions of the Policy relating to misrepresentations are coverage provisions, they are still subject to waiver or estoppel because they are ambiguous.  Because the court find the provisions at issue to be forfeiture provisions that may be waived, the court does not reach the issue of ambiguity of Policy terms and provisions.

that it could use to invoke a provision of its policy that would render the policy void and worthless, but nonetheless continues to accept premium payments from its insured, it will be considered to have waived that provision and will be estopped from using that provision to deny a claim." Ex parte Ikner, 682 So. 2d 8, 10 (Ala. 1996) (collecting cases). An insurer "cannot treat the policy as void for the purpose of defense to an action to recover for a loss thereafter occurring, and at the same time treat it as [valid] for the purpose of earning and collecting further premiums." Dunckley, 148 So. at 323.

As previously noted, defendants argue that Integon waived its right to rescind or void the Policy based on the alleged misrepresentations because after Integon became aware of those misrepresentations, (1) Integon continued to accept and retain premium payments on the Policy, (2) Integon repeatedly renewed the Policy, and (3) Integon paid a separate claim on the Policy. Integon generally does not dispute that it took these actions, but instead argues that it did not waive the alleged misrepresentations because (1) it did not learn of the same until almost seven months after the Accident, at which time the misrepresentation had "ceased"; (2) under Alabama law, Integon is not required to return the premiums until after a court declares the Policy void; and (3) Integon sent Gomez a reservation of rights letter. The court addresses each of Integon's arguments in turn, ultimately determining that a question of fact exists as to whether Integon waived its right to rescind.

### a. Knowledge of the Misrepresentation

Integon first argues that it did not waive its right to rescind the Policy based on the alleged misrepresentations because it did not learn of the same until August 2018— almost seven months after the Accident that occurred in January 2018. Integon explains

that Gomez's forfeiture had "ceased" by the time Integon learned of the misrepresentations in August 2018 because Mejia was no longer living with Gomez by that time and likewise was no longer a regular driver of her vehicles. ECF No. 165 at 20. Integon argues that because it did not continue to receive premium payments or pay on subsequent claims "with knowledge that the forfeiture was still in effect," it did not waive the alleged forfeiture. Id. at 23.

Defendants dispute Integon's assertion that it only discovered the alleged misrepresentations in August 2018, arguing instead that Integon discovered the alleged misrepresentations as early as January 8, 2018. The court finds that it does not have sufficient information to determine the date Integon knew or should have known of the misrepresentation as a matter of law. As an initial matter, the parties agree that the insurance agent, Moreno, met with Gomez some time after the Accident, but the date of that meeting is disputed. Defendants argue that, per Gomez's testimony, the meeting occurred on January 8, 2018; Integon argues that, per Moreno's testimony, the meeting occurred at the earliest in April 2018.[11] According to Moreno's affidavit, Gomez asked during the meeting "if there was any way that we could add her son to the policy because he had an accident." ECF No. 36-1; ECF No. 123-1. Moreno stated,

> So I asked her ["]when was the accident?["] and she told me the month that the accident took place, so my response was "well Mrs. Gomez even if we add your son to the policy right now it is not going to help him because the accident already happened" after that I asked her why you didn't tell me about him, and she responded ["]well I didn't want to tell you because he is young and I was afraid that my policy payment was going to be very high.["]

---

[11] The parties agreed during the hearing that the meeting occurred at some point before Integon received Price's letter of representation.

ECF No. 36-1; ECF No. 123-1.  During his deposition, Moreno testified that Gomez told him that the Ford Expedition "was [Mejia's] car actually, that he was driving it all the time."  ECF No. 182-1, Moreno Dep. at 169:19-25.  While Gomez maintains that she never made any misrepresentations to Moreno, defendants argue that Moreno's sworn statements show that Integon knew—via Moreno—that Gomez chose not to list Mejia on her policy to avoid a higher premium payment as early as January or April 2018.

Integon, on the other hand, argues that Moreno's knowledge of Gomez's material misrepresentations did not equate to Integon's knowledge of the same.  Integon again argues that Moreno was an independent agent, and "[a]n independent agent or broker is usually not an agent for the insurer at all; rather, he is the agent of the insured." Strickland, 491 So. 2d at 875 (emphasis added).  As previously noted, the court is without sufficient information to decide as a matter of law that Moreno was an agent of Integon such that his knowledge of the misrepresentation equates to Integon's knowledge. Likewise, the court does not have sufficient information to determine whether Moreno notified Integon of its conversation with Gomez.  In light of these pending factual issues regarding when Gomez's meeting with Moreno occurred and whether Integon should be charged with knowledge of the misrepresentation based on that meeting, the court cannot determine the date Integon became aware of the misrepresentation as a matter of law.

Still, even assuming that Integon did not discover the misrepresentation until its receipt of Price's letter of representation in August 2018 (and not at the time of Gomez's meeting with Moreno in January or April 2018), Integon continued to accept premiums after so discovering.  During the hearing, Integon confirmed that it does not dispute that it accepted and retained insurance premium payments from Gomez every month from

January 2018 through at least April 2020—well beyond August 2018 when it contends it first learned of the alleged misrepresentations. See ECF No. 149-17. Therefore, there is no genuine dispute that Integon accepted and retained insurance premiums for over two years after it became aware of the alleged misrepresentations.

Additionally, Integon confirmed during the hearing that it does not dispute that Integon renewed the Policy and paid a separate claim after it became aware of the alleged misrepresentations. As defendants explain, Integon renewed Gomez's Policy at least four times since the Accident, three times of which occurred after August 30, 2018. ECF No. 149-18. Additionally, Misdrain Hernandez, who is also a named insured on the Policy, was involved in an automobile accident on August 28, 2019, wherein Hernandez ran into the back of another person's vehicle. Integon concluded that Hernandez was at fault with respect to his accident, and in February of 2020, Integon paid a little over $20,000 to State Farm in order to indemnify Hernandez. This claim related to an accident that occurred approximately a year after Integon claims it discovered the alleged misrepresentations, and Integon paid that claim approximately a year and half after that discovery.

Accordingly, the court finds undisputed that Integon continued to accept premiums and otherwise treated the Policy as valid well after it learned of the alleged misrepresentations. Rather, the crux of Integon's first argument is that those actions did not constitute waiver because the facts underlying those misrepresentations had "ceased" at that point. This argument is nonsensical. In its complaint and throughout this litigation (including with respect to the instant motions), Integon has argued that Gomez made misrepresentations in her application by failing to disclose that Mejia lived with her

22

and that Mejia was a regular operator of her vehicles at that time, and the Policy was void ab initio as a result of those misrepresentations. The misrepresentations on which Integon attempts to rely to rescind the Policy occurred as soon as Gomez submitted her application—it matters not whether Mejia lived with Gomez at the time Integon discovered that misrepresentations were made on the application. Integon fails to point to anywhere in the Policy that suggests that its alleged right to rescind was conditioned on the existence of an ongoing misrepresentation at the time of discovery. Indeed, such an argument would undermine Integon's entire misrepresentation claim. In other words, if Integon's right to rescind required an ongoing misrepresentation, and Integon concedes that no ongoing misrepresentation exists or existed at the time of discovery, then Integon makes the case itself that it has no right to rescind the Policy at this point in time. The court thus finds that Integon had the opportunity to invoke its right to rescind after discovering the alleged misrepresentation in the application—regardless of whether Mejia continued to live with Gomez or operate her vehicles after the time that the misrepresentation was allegedly made. Integon failed to invoke that right but rather continued to treat the Policy as valid, and, under Alabama law, that failure can, in certain situations, constitute waiver.

### b.  Treating the Policy as Valid Until Court Order

Integon next argues that its actions with respect to accepting and retaining premiums, renewing the Policy, and paying a claim thereunder do not constitute waiver because Integon "must treat the Policy as valid until the Court declares it void." ECF No.

165 at 23. This argument is unsupported by Alabama law[12] and is incompatible with the well-settled principle that an insurer cannot treat a policy as valid for the purpose of earning and collecting premiums but invalid for the purpose of paying claims or defending actions against the insured. See Dunckley, 148 So. at 323. To hold otherwise would give the insurance company the option of keeping premiums with full knowledge of a material misrepresentation when circumstances benefit it (i.e., when no claims are made) and the option to sue to cancel the same policy and return the premium when circumstances no longer benefit it (i.e., when a claim is made).

### c. Reservation of Rights

Integon additionally argues that it did not waive its right to rescind due to misrepresentations because it reserved that right in a letter in connection with its investigation of the Accident claim. On August 6, 2018, Integon sent a reservation of rights letter to Gomez, which stated that it received insufficient notice of the Accident

---

[12] Integon's reliance on Caribbean I Owners' Ass'n, Inc. v. Great American Insurance Company of New York, 600 F. Supp. 2d 1228 (S.D. Ala. 2009) for this proposition is misplaced. In Caribbean I, an insurer sought rescission of a policy due to an alleged material misrepresentation in the policy application. The insured argued that the right of rescission was waived by the insurer's failure to return policy premiums paid before the insurer discovered the alleged misrepresentation. The court held that there was no timeframe for returning premiums in such a case and that "if the [fact finder] finds at trial that [the insurer is entitled to rescind the policy pursuant to [Alabama law], this Court will require tender of the Policy premium by [the insurer] back to [the insured] as a condition of rescission." 600 F. Supp. 2d at 1240 n.14. As Integon itself points out, this case is distinguishable because in Caribbean I, unlike here, "[t]here [was] no allegation or evidence here that [the insurer] accepted premium payments from [the insured] after becoming aware of the alleged misrepresentations in the insurance applications." Id. In other words, there was no allegation in Caribbean I that the insurer continued to treat the Policy as valid after discovering the misrepresentation. Here, defendants are arguing waiver because Integon accepted premiums and continued to treat the Policy as valid after learning of a ground for forfeiture. Caribbean I is therefore inapplicable and simply does not require, nor lean credence to the argument that insurers must treat policies as valid after discovering a misrepresentation unless and until a court voids the policy.

and, therefore, there was a possibility that Integon would not provide coverage for the

Accident.  The letter noted that Integon was investigating the claim and set forth the

following:

> As of now, the investigation of this matter is being handled under a full Reservation of Rights by Integon National Insurance Company ("the Company") . . . . Integon National Insurance Company and its representatives may investigate any and all matters in connection with this claim. The Company, its agents, representatives and adjusters are investigating this claim without prejudice to the Company under this policy. We reserve unto the Company all its rights and defenses under said policy of insurance as fully and completely as if the said Company had refused to take any steps whatsoever in the investigation as set out above. . . . The intent and purpose of this Reservation of Rights is to permit an impartial and full investigation of all matters relating to this claim and the liability, if any, to Integon National Insurance Company without incurring any admission of liability.  It also preserves any of the rights of any of the parties without estoppel, waiver or forfeiture. Further, consistent with this Reservation, Integon National Insurance Company reserves the right to deny coverage to you or anyone claiming coverage or benefits under this policy.  We reserve the right to discontinue the investigation of the claim, to refuse to negotiate settlement of the claim, to refuse to defend you in the event of litigation, or to refuse to pay any judgment that might be awarded to or against you. In any further handling of your claim (investigation, negotiations, or defense) any actions taken by the Company will not stop or waive the rights of the Company to assert the coverage defense(s).

ECF No. 149-19 (emphasis added).  Integon issued a similar letter to Mejia on August 29,

2018.  ECF No. 149-20.

The reservation of rights letter creates a genuine issue of material fact as to

waiver.  Defendants argue that the reservation of rights letter indicated that Integon was

reserving its right to deny coverage notwithstanding its investigation of the claim.  As

defendants explain, they are not arguing waiver due to any action Integon took in its

"handling of [the] claim (investigation, negotiations, or defense)."  See ECF No. 149-19;

ECF No. 149-20.  Rather, defendants are arguing waiver based on Integon's continued

acceptance and retention of premium payments, repeated renewals of the Policy, and payment of a separate claim on the Policy, all after Integon had notice of the alleged forfeiture conditions.  Integon, on the other hand, argues that it continued to accept premiums, renew the Policy, and pay claims because its investigation was ongoing.  According to Integon, the letter and investigation were a response to its discovery of the forfeitures at issue that required further investigation.  Integon maintains that there is no Alabama authority that indicates that an insurer cannot both reserve its rights and continue to treat the policy as valid while it investigates a claim and related forfeiture issues.  The court finds that this letter is more than a scintilla of evidence that Integon timely indicated that it did not intend to relinquish its right to rescind the Policy due to misrepresentation or its other liability defenses as it investigated the claim.  Therefore, the court declines to grant summary judgment on the issue of waiver in favor of any party.

        To summarize the issue of waiver, the court finds that Integon's right to rescind under the Policy due to misrepresentations can be waived.  However, the court also finds a genuine issue of material fact exists as to whether there was waiver in this instance.  The court cannot determine the date Integon had knowledge of the misrepresentation as a matter of law.  And although it appears that Integon undisputedly accepted premiums, renewed the Policy, and paid a separate claim at least for some time after learning of the misrepresentation, the reservation of rights letter creates a genuine, material factual dispute regarding whether Integon preserved its right to rescind the Policy while it investigated the claim.  Therefore, the court cannot decide the issue of waiver on summary judgment.  Because there is a genuine issue of material fact as to whether any misrepresentation was made, whether Gomez was responsible for any such

misrepresentation, and whether Integon waived its right to rescind on that basis, summary judgment is inappropriate on Integon's misrepresentation claim and defendants' related counterclaims.

### B.  Notice Claim

In addition to its attempt to void the Policy due to alleged material misrepresentations, Integon seeks a declaration that it does not have a duty to defend or indemnify Gomez or Mejia in the Underlying Action because Gomez and Mejia failed to timely notify Integon of the Accident.  Integon argues that it is entitled to summary judgment on this claim because there is no genuine dispute that its first notice of the subject loss came on or about August 3, 2018 upon receipt of the letter of representation from Price's counsel, and that Gomez and Mejia failed to promptly notify Integon of the Accident as required by the Policy.  Defendants argue that they are entitled to summary judgment on this claim because Integon received notice of the loss on January 5, 2018, the day of the accident, and Integon waived its right to enforce the notice provision.  ECF No. 33 at 9-13.  The court finds a genuine issue of material fact exists as to the notice claim and corresponding counterclaims such that neither party is entitled to summary judgment on the matter.

The Policy provides, <u>inter alia</u>,

A. We do not provide coverage under this Policy unless you have paid the required premium when due.  <u>Failure to give notice as required may affect coverage provided under this Policy</u>.  Failure to comply with any of the duties in this Policy may result in denial of coverage and relieve us of all duties to investigate, settle, defend, pay any judgment or otherwise honor any claims made by an insured or against an insured.

B. <u>We must be notified promptly of how, when and where the accident or loss happened</u>.  Notice should include the following:

> 1. All known facts and circumstances. This notice to us should include all known names, addresses and telephone numbers of any injured persons and witnesses.
> 2. All known license plate information of vehicles involved or vehicle descriptions; and
> 3. All known driver's license information of persons involved.

Compl. at 29 (emphasis added).[13]

The parties agree that on the date of the Accident, the responding police officer, Bryan Sadler ("Sadler"), initiated a call to Integon's "Policy Services" department. Sadler told an Integon insurance service representative with that department that he was calling from the City of North Charleston in South Carolina and that a collision had occurred. ECF No. 149-10, Sadler Dep. at 38:3-16. The purpose of the call is somewhat disputed, but Integon insists that it was not to file a claim but rather was to confirm whether insurance was in place on the vehicle in question so that he could put that information on a FR-10 Insurance Verification Form.[14] During the call, when asked by

---

[13] The Policy defines "accident" and "accidental" to "mean a sudden, unexpected and unintended event." Id. at 26. The Policy defines "loss" to "mean[] sudden, direct, and accidental destruction or damage" but "does not include diminution in value." Id. at 27.

[14] Integon provides lengthy argument that the call did not constitute notice because it was made by Sadler—rather than Gomez and Mejia—and the purpose of the call was to verify insurance—not to file a claim. However, the court finds these issues immaterial to the question of whether Gomez and Mejia provided the requisite prompt notice of the Accident. Pointing to the header of a section entitled "DUTIES AFTER AN ACCIDENT OR LOSS—FILING A CLAIM," Integon asserts this "clearly enumerates an insured's duty to file a claim after an accident or loss." ECF No. 165 at 25; see also ECF No. 149- 2 at 8. However, nowhere does the Policy state that the insured must file a claim or even be the person providing notice to Integon. Instead, the Policy states, "We must be notified promptly of how, when and where the accident or loss happened" and lists items that notice "should include." ECF No. 149-2 at 8. The "notice" requirements of the Policy are defined by the terms of the Policy—not what Integon asserts the Policy requires. See Ala. Farm Bureau Mut. Cas. Ins. Co. v. Teague, 110 So. 2d 290 (Ala. 1959). Because the Policy does not state who must notify Integon of an accident or loss, that a person must use certain words (such as "I'm filing a claim") in their notice, or that a call must be made to the "report a claim" line rather than "customer care" line, the court

the Integon service representative the purpose of the call, Sadler said "I'm calling in reference to a vehicle that has your insurance. I just need to see if it is currently active today, the insurance." ECF No. 149-10, Sadler Dep. 37:6–14. At one point during the call, Sadler put the call on speaker phone so that Mejia could confirm his phone number and mailing address to the Integon service representative, who then verified that the car in question was tied to an existing insurance Policy. Id. at 39:8–40:14. Once the Integon service representative confirmed that there was an active Policy on the car in question and provided the Policy number, Sadler ended the call. Id. at 40:15-41:4. Neither Sadler nor Mejia asked to file a claim or speak with the claims department.

Based on this call, defendants argue that Integon was on notice on the date of the Accident, January 5, 2018, that a collision occurred in North Charleston, South Carolina involving the at-issue Policy; that the driver was not listed on the Policy but was the son of the named insured; and that the accident involved Gomez's Ford Expedition. Defendants assert that this information satisfies the Policy's notice requirement. Integon, conversely, argues that Sadler's call did not constitute notice because the requisite information for notice—how, when, and where the Accident occurred—was not provided.[15] Sadler told an Integon service representative with the "Policy Services"

---

rejects Integon's attempt to insert requirements into the Policy that simply are not there. See, e.g., Pa. Nat'l Mut. Cas. Ins. Co. v. J.F. Morgan Gen. Contrs., Inc., 79 F. Supp. 3d 1245, 1253 (N.D. Ala. 2015) (rejecting the argument that "J.F. Morgan also had to notify" the insurer, stating, "under the unambiguous language of the policy, notice of Smith's accident and McFry's lawsuit need only come from Anniston Concrete, and it did").

[15] The parties dispute the information that the Policy requires the notice to include. The Policy states, "We must be notified promptly of how, when and where the accident or loss happened." ECF No. 149-2 at 8. The Policy also states that notice of the loss "should" include specified additional information. Id. Defendants argue that the Policy clearly differentiates between information the notice "must" contain and

department that he was calling from the City of North Charleston in South Carolina, and that a collision had occurred.  Id. at 38:3-16.  However, Sadler never indicated that the collision occurred in North Charleston or on what street or intersection the collision occurred.  He also did not explicitly indicate the time or date the collision occurred.  He did not explain what kind of collision occurred or provide details regarding how the collision occurred—for example, whether the collision was with a pedestrian rather than with a tree or another car.  Integon argues that without all such information, it did not receive notice as contemplated by the Policy.

It is clear to the court that the call from Sadler did not satisfy the notice requirements of when, where, and how the Accident occurred.  Although Sadler arguably provided the "when" and "where" information by calling at the time of the Accident and stating that an Accident had occurred in North Charleston, Sadler did not provide any

---

information the notice "should" contain.  Therefore, according to defendants, the notice only needed to include how, when, and where the Accident happened.  Integon argues that the words "must" and "should" are not separately defined in the Policy.  The Policy says that notice "must" be given, and then continues to state what "should" be included within that notice.  In this context, Integon argues, "should" is not optional, but rather it points to what insureds are duty-bound to include in their "notice" to Integon.  As such, Integon insists that the Policy "requires" notice to include "all known facts and circumstances," including "all known names, addresses, and telephone numbers of any injured persons and witnesses; and all known driver's license information of persons involved."  ECF No. 149-2 at 8.  The court finds that the Policy is ambiguous as to whether notice must include the information in the "should" list to be valid.  As it must, the court resolves      that ambiguity in defendants' favor and finds that the information that the Policy states notice "should" include is not strictly required for the notice to be valid.  When the language of an insurance policy provision is ambiguous, "all ambiguities must be resolved against the insurance company" and in favor of the insured.  Safeway Ins. Co. of Ala., Inc. v. Herrera, 912 So. 2d 1140, 1143 (Ala. 2005) (citing Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So. 2d 687, 692 (Ala. 2001)).  Accordingly, for the purposes of this motion, the court only addresses whether there is a genuine dispute that the notice included how, when, and where the Accident happened.

information about how the Accident occurred.[16]  Counsel for Price conceded this point during the hearing.  Therefore, the call did not constitute notice to Integon as a matter of law.

Still, defendants argue that even if the call did not provide proper notice, Gomez reported the Accident to Moreno during their conversation on January 8, 2018 and that this meeting amounts to sufficient, prompt notice to Integon.  However, as noted previously, the date of this meeting is unclear based on the record, as is whether Moreno can be considered Integon's agent such that his knowledge of the Accident can be imputed to Integon.  Notably, there appears to be more evidence that Moreno's knowledge should be imputed to Integon in the context of notice of the Accident than in the context of the material misrepresentation as to Mejia's residence.  Moreno's contract with Integon states, inter alia, "The Agent shall report all losses to the Company promptly after Agent becomes aware of them, and shall forward any lawsuits or complaints to the Company promptly."  ECF No. 149-11 at ¶ 3.6.  In other words, while the court has not seen evidence that Moreno was required to report the information about Mejia's residence or Gomez's decision not to list him as a resident in her household, there is evidence of record that Moreno was required to report the information he received about the Accident.  Additionally, Jennifer Currie was asked in her deposition whether, as one

---

[16] Defendants argue that Carlos Manalo, who worked in Integon's First Notice of Loss Department in January of 2018, testified during his deposition that the information from the call was sufficient for him to file a claim.  ECF No. 149-27, Manalo Dep. at 22:1–22:12.  However, this evidence fails to create a genuine issue of material fact regarding the sufficiency of notice provided in the call.  As defendants themselves point out, there is a difference between filing a claim and providing notice of how, when, and where the Accident occurred as required by the Policy.  The Policy did not require a claim be filed, but did require notice be given of the how, when, and where the loss occurred.  Therefore, Integon did not necessarily have enough information to constitute notice simply because Integon had enough information to file a claim.

of Integon's adjusters, she ever received reports of losses from agents, and she answered in the affirmative, indicating that agents can and do report losses to Integon by sending a certain form.  See ECF No. 149-13, Currie Dep. at 75:8-19.  Because Moreno had a duty to report accidents to Integon, there is a genuine issue of material fact as to whether Integon received notice of the Accident via Moreno in January or April 2018.  See Sec. Title Guar. Corp. v. GMFS, LLC, 910 So. 2d 787, 793 (Ala. Civ. App. 2005) (finding that notice to the agent is notice to the insurer when the agent "did have express authority to receive notice of claims and to notify Security Title of those claims"); J.F. Morgan, 79 F. Supp. 3d at 1251 (finding IPS had authority to receive notice for Penn National where the agreement stated, inter alia, that "[t]he Agent agrees to report promptly[] all losses or claims").[17]

However, even if Integon did not receive notice until receiving Price's letter of representation in August 2018, there also exists a genuine issue of material fact as to the reasonableness of Gomez and Mejia's delay in providing sufficient notice.  Here, the Policy required Gomez and Mejia to provide prompt notice of the Accident.  "A requirement in a policy for prompt or immediate notice, or that notice must be given, 'immediately,' 'at once,' 'forthwith,' 'as soon as practicable,' or 'as soon as possible' generally means that the notice must be given within a reasonable time under the circumstances of the case."  Pan Am. Fire & Cas. Co. v. DeKalb-Cherokee Cntys. Gas Dist., 266 So. 2d 763, 771 (Ala. 1972).  "The question of whether delay is reasonable is a question of fact . . . ."  Pinson Truck Equip. Co. v. Gulf Am. Fire & Cas. Co., 388 So.2d

---

[17] Integon argues that, even so, defendants have not shown that Gomez provided sufficient how, when, and where information to Moreno to satisfy the notice requirement.  Based on the record before it, the court finds that this is a factual issue best reserved for the jury.

955, 957 (Ala. 1980) (citing <u>State Farm Fire and Cas. Co. v. Hartford Accident and Indem. Co.</u>, 347 So. 2d 389 (Ala. 1977)).  The reasonableness of delay is measured only by the reasons for the delay and the length thereof; the insurer need not show prejudice as a factor in determining reasonableness.  <u>State Farm Mut. Auto. Ins. Co. v. Burgess</u>, 474 So. 2d 634, 636 (Ala. 1985).

There is sufficient evidence of record to submit the question of the reasonableness of Gomez and Mejia's delay in notice, if any, to the jury.  Defendants argue that Gomez did not provide any notice to Integon after January 8, 2018 because Moreno told Gomez there was nothing else for her to do at that time, and she believed that Sadler had properly reported the Accident when it occurred.  Gomez stated in her deposition that she reported the accident to Moreno on January 8, 2018.  ECF No. 182-11, Gomez Dep. at 104:1–105:25.  She stated that she asked "if there was anything that needed to be done, and [Moreno] told me that nothing showed up in the computer as far as anything reported on my policy, but that we would see what would appear in the future."  <u>Id.</u> at 106:20–107:1.  When asked if Gomez knew whether her son ever reported the Accident "to the insurance agents," she stated, "The day of the accident, [Sadler] asked me for the insurance company's phone number," and "the officer asked me for the policy number and the insurance company phone number to notify them of the accident."  <u>Id.</u> at 107:18-24.  Based on the details of Sadler's call and Gomez's conversation with Moreno, a jury must determine whether any delay in notice was reasonable such that the Policy nevertheless provides coverage.  <u>See</u> <u>S. Guar. Ins. Co. v. Thomas</u>, 334 So. 2d 879, 882 (Ala. 1976) ("Where facts are disputed or where conflicting inferences may reasonably be drawn

from the evidence, the question of the reasonableness of a delay in giving notice is a question of fact for the jury." (internal citation omitted)).

Finally, the court considers defendants' argument that even if Integon did not receive prompt notice and the delay was unreasonable, Integon waived its right to deny coverage for lack of notice. To be sure, "[l]ack of formal notice of loss or death under an insurance policy may be waived" in some situations. <u>Allen</u>, 234 So. 2d at 569 (citing <u>St. Paul Fire & Marine Ins. Co. v. Smith</u>, 194 So. 2d 830, 832 (Ala. 1967); <u>Travelers' Ins. Co. v. Plaster</u>, 98 So. 909, 911 (Ala. 1924)). For example, the Alabama Supreme Court held that, "where an insurer refused to pay a loss because of some alleged defense wholly part from furnishing the prescribed proof of loss or death, it thereby waives the necessity of furnishing such proof." <u>Allen</u>, 234 So. 2d at 569. However, the only grounds for waiver offered by defendants are that Integon "(a) continued to accept and retain monthly premium payments from Gomez; (b) renewed the Policy at least four times; and (c) paid a separate claim on the Policy." ECF No. 149-34 at 30. The court fails to see how Integon could have waived its notice claim on these grounds because the notice requirement concerns coverage for only that particular claim—the Accident. The Policy states that "Failure to comply with any of the duties in this Policy may result in denial of coverage and relieve us of all duties to investigate, settle, defend, pay any judgment or otherwise honor any claims made by an insured or against an insured." Compl. at 29. In other words, the Policy does not state that failure to provide notice of the Accident may be grounds to rescind the entire Policy—it may only be grounds to deny that particular claim. In this respect, the issue here differs from the issue of waiver of the misrepresentation provision, which provides that a misrepresentation may be grounds to

void the entire Policy.  In the context of notice, Integon's continued acceptance of premiums and continued treatment of the Policy as valid cannot constitute waiver.  And even if it could, as discussed above, Integon's reservation of rights letter creates a genuine issue of material fact as to whether Integon waived any rights relating to lack of notice.

In sum, the court does not find that Sadler's call satisfied the Policy's notice requirements because the call did not provide information on how the Accident occurred. Nevertheless, the court declines to grant summary judgment on Integon's notice claim and defendants' related counterclaims because (1) Moreno's duty to report the Accident to Integon upon learning of it creates a factual issue as to whether Integon received notice of the Accident in January or April 2018; and (2) there is sufficient evidence that Gomez believed notice was given to Integon via Sadler's call and via her meeting with Moreno for a jury to find that any delay in notice was reasonable.  Defendants have not established as a matter of law that Integon waived any right related to notice by accepting premiums and treating the Policy as valid because the Policy only provides that Integon may deny the claim based on lack of notice—not rescind the entire Policy.

## C.  Defendants' Standing to Bring Counterclaims

As a final matter, the court addresses the parties' arguments regarding defendants' standing to bring their counterclaims.  Integon argues that summary judgment is warranted in its favor on Price's counterclaims because the Underlying Action remains unresolved.  Under Alabama Code §§ 27-23-1 and 27-23-2, "an injured party cannot bring a direct action against the insurance carrier, absent a final judgment against its insured."  Knox v. W. World Ins. Co., 893 So. 2d 321, 325 (Ala. 2004) (citing Maness v.

35

Alabama Farm Bureau Mut. Cas. Ins. Co., 416 So. 2d 979, 982 (Ala. 1982)).  Even if the

injured party is a defendant in a declaratory judgment action initiated by an insurance

carrier, claims by the injured party against an insurer are barred until a final judgment in

the underlying tort case.  Maness, 416 So. 2d at 982.

Price agrees that she cannot maintain counterclaims against Integon at this time

because she is an injured party and final judgment has not been entered in the Underlying

Action.  However, she argues that the appropriate relief is not summary judgment but

dismissal of Price's counterclaims without prejudice.  See State Farm Mut. Auto. Ins. Co.

v. Brown, 894 So. 2d 643, 649–50 (Ala. 2004) (reversing the trial court's grant of the

Browns' motion for partial summary judgment and instructing the lower court on remand

to dismiss the claims against the insurer, finding "that § 27-23-2 prevents the Browns

from bringing this action at this time and in this posture" but noting that "[i]f the Browns

obtain a judgment against . . . the alleged tortfeasor, then . . . they may pursue an action

against State Farm.").  The court agrees and dismisses Price's counterclaims without

prejudice.

Additionally, Price argues that Gomez and Mejia have standing to pursue their

counterclaims against Integon, as nothing in Alabama Code § 27-23-1 or § 27-23-2

prevents an insured from asserting claims against their insurer.  See Ala. Code § 27-23-1,

§ 27-23-2.  Integon agrees that its standing argument does not apply to Gomez and Mejia

because they are not injured parties.  As such, these counterclaims remain pending.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** all motions for summary

judgment.

36

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 23, 2022**
**Charleston, South Carolina**